UNITED STATES of America, Appellee,

v.

Jeremy D. HOLMES, Appellant.

No. 93–2388.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1993.

Decided Jan. 11, 1994.

Susan Koenig–Cramer, Omaha, NE, argued, for appellant.

Marie R. Leslie, Omaha, NE, argued, for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

MAGILL, Circuit Judge.

Jeremy Holmes appeals his jury conviction and the trial court's [1] 120–month sentence for distribution of less than one gram of lysergic acid diethylamide (LSD) under 21 U.S.C. § 841(a)(1) (1988), conspiracy to distribute LSD under 21 U.S.C. § 846 (1988), and distribution of more than one gram of LSD within 100 feet of a video arcade facility under 21 U.S.C. § 860 (Supp. III 1991). Holmes argues that (1) the trial court improperly denied his motion for acquittal based on entrapment as a matter of law, (2) there was insufficient evidence for the jury to conclude that he was predisposed to distribute LSD, (3) the trial court improperly applied the Federal Sentencing Guidelines (Guidelines), and (4) the trial court failed to depart under the Guidelines. We affirm Holmes' conviction and sentence, but remand so that the district court may consider whether to reduce Holmes' sentence pursuant to a recent amendment to the Guidelines concerning the method for determining the weight of LSD and its carrier medium.

## I. BACKGROUND

The facts in this case are disputed. Because Holmes' first two claims [2] challenge the denial of a motion for acquittal and the sufficiency of the evidence, respectively, we necessarily must resolve the factual disputes in the government's favor. *See United States v. Pardue*, 983 F.2d 843, 845 (8th Cir.1993) (per curiam) (stating that a court reviewing a

---

1. The Honorable Lyle E. Strom, Chief Judge, United States District Court for the District of Nebraska.

2. The factual disputes do not effect the resolution of Holmes' other claims.

motion for acquittal must view evidence in the light most favorable to the government); *United States v. Britton*, 9 F.3d 708 (8th Cir.1993) (per curiam) (stating that a court reviewing a claim of insufficiency of evidence must view evidence in the light most favorable to the jury verdict). The evidence viewed in the light most favorable to the government and to the jury's verdict established the following. On February 11, 1992, Holmes told his friend, Scott Brown, that he needed money quickly and had both marijuana and LSD to sell. Brown, who had worked as an informant for various government law enforcement agencies, forwarded this information to Special Agent Dennis Hampton of the Bureau of Alcohol, Tobacco and Firearms. Holmes and Agent Hampton went to a prearranged place where Holmes sold Agent Charles Freyermuth a sheet of blotter paper with thirteen doses or "hits" of LSD. At this sale, Holmes negotiated the sale price and indicated that he could procure more LSD and provide a volume discount for larger sales. Enforcement officials recorded the entire transaction on videotape and entered the tape into evidence at trial.

Following this first sale of LSD, Holmes informed Brown that he had more LSD to sell if Brown could locate another buyer. Brown informed Deputy Ed Van Buren of the Douglas County Sheriff's Department that he was with an individual who had LSD to sell. Holmes spoke with Deputy Van Buren over the telephone and negotiated a $600 sale price for a sheet of blotter paper with 200 hits of LSD. Holmes directed Deputy Van Buren to go to the Family Fun Center in Omaha, Nebraska, to complete the sale. Holmes discussed the quality of the LSD purchased by Van Buren, quoted a price for a future sale of marijuana, completed the sale outside of the Family Fun Center, and told Deputy Van Buren to call him at home regarding any future narcotics transactions.

Lisa Barbato, the government's chemist at trial, testified that she tested two separate sheets of blotter paper corresponding to the two drug transactions. Both sheets were perforated and subdivided into individual squares with a rose imprint on each individual square. The first sample had 13 squares; the second sample had 200 squares. Each individual square represented one dose or "hit" of LSD. Barbato testified that she tested 3.5 individual squares from each sample and determined that each sample contained LSD. Barbato also spot tested an additional .5 squares from both the 13 and 200 square samples. These spot tests also indicated the presence of LSD. Barbato weighed the samples, including the weight of the blotter paper, and estimated the weight of the samples to be 84.5 milligrams for the 13–square sample and 1.2 grams for the 200–square sample. In response to the trial court's inquiry whether she chose the individual test squares at random or from one side, Barbato testified that she chose the test squares from one side of the larger sheets.

## II. DISCUSSION

Holmes raises several issues on appeal. First, he argues that the trial court erred in denying his motion for judgment of acquittal based on entrapment as a matter of law. Second, Holmes claims that there was insufficient evidence for a jury to conclude that he was predisposed to commit the crimes. Third, Holmes challenges the trial court's application of the Guidelines as to the weight of the LSD. Finally, Holmes challenges the trial court's failure to depart downward under the Guidelines because of the government's outrageous conduct. We discuss these claims in turn.

### A. Entrapment as a Matter of Law

Holmes argues that Brown, the government's agent, enticed and urged him to sell LSD and implanted the disposition to commit the offense into his innocent mind. Holmes claims that he finally committed the crimes at Brown's urging. Holmes concludes, therefore, that "[t]he defense presented sufficient evidence at trial to show entrapment as a matter of law," Appellant's Br. at 25, and the trial court erred "[b]y relying only on the prosecution's evidence and discounting the defense's evidence," *id.* Holmes also relies on the Supreme Court's decision in *United States v. Jacobson* to support his "entrapment as a matter of law" claim. *See* — U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992).

■ "In reviewing the trial court's ruling on the motion for acquittal, this court must view the evidence in the light most favorable to the government." *Pardue*, 983 F.2d at 845. In order to demonstrate entrapment as a matter of law, the evidence " 'must clearly have indicated that a government agent originated the criminal design; that the agent implanted in the mind of an innocent person the disposition to commit the offense; and that the defendant then committed the criminal act at the urging of the government agent.'" *United States v. Randolph*, 738 F.2d 244, 245 (8th Cir.1984) (per curiam) (quoting *United States v. Shaw*, 570 F.2d 770, 772 (8th Cir.1978)); *accord Pardue*, 983 F.2d at 845.

■ Viewing the evidence in the light most favorable to the government, we conclude that the trial court properly denied Holmes' motion because there was sufficient evidence for a jury to conclude that the government did not entrap Holmes. *See Pardue*, 983 F.2d at 845. The government presented evidence that Holmes initiated contact with Brown regarding the proposed sale of LSD. Tr. at 258 ("[H]e said that he had some stuff to move."). The government also produced evidence, recorded on videotape, that Holmes negotiated the price of the LSD, vouched for the quality of the LSD, was familiar with LSD drug jargon, and agreed to contact Agent Hampton for future sales. Tr. at 63–65. Finally, the government presented evidence that Holmes contacted Deputy Van Buren and organized and completed a sale of LSD and proposed a future sale of marijuana. Tr. at 156–60.

Further, Holmes' reliance on *Jacobson* is misplaced. In *Jacobson*, the undisputed evidence demonstrated that the government had attempted to induce the defendant for over twenty-six months to buy obscene literature through repeated mailings and contacts from government agents and fictitious organizations. —— U.S. at ——, 112 S.Ct. at 1541. The Supreme Court stated, however, that an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest on the spot or later. In such a *typical case* … the en-trapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition.

*Id.* (emphasis added). The evidence in Holmes' case is even more compelling than in the *typical case* discussed in *Jacobson* because the government presented evidence that Holmes, not the government, initiated the contact regarding the sale of the LSD. *Cf. id.;* tr. at 258. We conclude that the evidence, viewed in a light most favorable to the government, supports the trial court's denial of Holmes' motion for acquittal based on entrapment as a matter of law.

## B. Insufficient Evidence of Predisposition

■ Holmes argues that there was insufficient evidence for a reasonable jury to conclude that he was predisposed to sell LSD. In reviewing the sufficiency of the evidence, we look at the evidence in the light most favorable to the verdict. *United States v. Madkins*, 994 F.2d 540, 541 (8th Cir.1993). We can reverse the verdict only if we conclude that "a reasonable fact finder could not have found the defendant guilty beyond a reasonable doubt." *United States v. Temple*, 890 F.2d 1043, 1045 (8th Cir.1989). "The evidence need not exclude every reasonable hypothesis of innocence," *id.,* but it must " 'be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty,' " *id.* (quoting *United States v. Holm*, 836 F.2d 1119, 1122 (8th Cir.1988)).

■ The affirmative defense of entrapment has two elements: government inducement of the crime and a defendant's lack of predisposition to engage in the criminal conduct. *United States v. Van Slyke*, 976 F.2d 1159, 1162 (8th Cir.1992). " 'The defendant carries the initial burden of presenting some evidence that he or she was induced by government agents to commit the offense.'" *Id.* (quoting *United States v. McGuire*, 808 F.2d 694, 696 (8th Cir.1987) (per curiam)). If the defendant properly satisfies its evidentiary burden, then "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government

agents." *Jacobson,* —— U.S. at ——, 112 S.Ct. at 1540.

■ We assume, arguendo, that Holmes presented sufficient evidence of inducement to require the government to prove predisposition.[3] We conclude, however, that there was sufficient evidence for a jury to conclude beyond a reasonable doubt that Holmes was predisposed to sell LSD before any government agent contacted him. The government presented evidence that Holmes (1) initiated the plan to sell drugs and secured the help of Brown to locate customers, tr. at 258, (2) negotiated the price for the first sale of LSD, *id.* at 107–08, (3) demonstrated knowledge of the jargon involved in sale of LSD and marijuana, *id.* at 63–65, and (4) used LSD once a month and used marijuana regularly, *id.* at 520. We conclude that the jury had sufficient evidence to conclude beyond a reasonable doubt that Holmes was predisposed to sell LSD.

## C. Application of Sentencing Guidelines to Weight of LSD

Holmes argues that the trial court twice erred in applying the Guidelines to determine the weight of the LSD seized. First, Holmes argues that the trial court improperly included the weight of the blotter paper in determining the total weight of the LSD seized, and second, the trial court had insufficient evidence to support a finding that all of the 213 "hits" recovered contained LSD.

■ Holmes' argument regarding exclusion of the weight of the blotter paper is without merit. In *Chapman v. United States,* the Supreme Court held that 21 U.S.C. § 841 "requires the weight of the carrier medium to be included when deter-

mining the appropriate sentence for trafficking in LSD." 500 U.S. 453, ——, 111 S.Ct. 1919, 1929, 114 L.Ed.2d 524 (1991); *see also United States v. Schenk,* 983 F.2d 876, 881 (8th Cir.1993). The Guidelines state that the term " 'mixture or substance' as used in [section 2D1.1] has the same meaning as in 21 U.S.C. § 841." U.S.S.G. § 2D1.1, comment. (n.1). Thus, the trial court properly included the weight of the blotter paper in determining the total weight of the LSD.

Holmes also argues that there was insufficient evidence regarding the weight of the LSD because Barbato, the government's chemist, did not test all 213 squares. Holmes argues that, as to the remaining 205 untested squares, there was insufficient evidence to conclude that they also contained LSD. Holmes bolsters his argument by noting that Barbato testified that she picked the test squares from one side. Tr. at 251.[4]

■ At sentencing, "[t]he court must determine, by a preponderance of the evidence, the quantity of drugs involved." *United States v. Johnson,* 944 F.2d 396, 405 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991). We must accept the trial court's findings of fact unless they are clearly erroneous. 18 U.S.C. § 3742(d) (1988); *see also United States v. Brett,* 872 F.2d 1365, 1371 (8th Cir.1989). This court has accepted "the use of random testing to establish that a substance contains cocaine base for purposes of sentencing under the guidelines." *Johnson,* 944 F.2d at 404–05; *accord Brett,* 872 F.2d at 1372.

The trial court concluded at sentencing that the government had produced sufficient evidence to conclude that all of the squares contained LSD.[5] Although Barbato declined

---

3. Holmes presented evidence that Brown, the government's agent, had initiated the sales of LSD and had induced Holmes to participate. Tr. at 503–06.

4. The trial court questioned Barbato as follows:
   THE COURT: ... When you test, for example, for LSD, like this, the squares that you use, do you pick those at random from the full 200 or the 13, or do you pick three at one end or three at another end?
   [BARBATO]: I pick three at one end.
   THE COURT: That was true with respect to both instances?

[BARBATO]: That's correct.
Tr. at 250–51.

5. At the sentencing hearing, the trial court stated:
   They were all part of one sheet of paper, and one or two were tested, as I recall, on each sheet of paper, and it seems to me that it's very fair to presume under those circumstances that by a preponderance of the evidence it's established that all of it was LSD.
Tr. at 629.

to characterize her selection as random, we fail to see any meaningful distinction between choosing test squares at random and choosing test squares from "one end" or "another end." The evidence indicated that Barbato tested 3.5 squares of the 13 sold to Agent Freyermuth, and 3.5 squares of the 200 sold to Deputy Van Buren. The two batches of test squares were torn from the larger perforated sheets and each of the test squares tested positive for LSD. The test squares were imprinted with a rose design and were identical in appearance to the untested squares. Barbato's spot testing of an additional .5 squares from each sample also indicated the presence of LSD. We cannot say that the trial court's factual conclusion that all of the test squares contained LSD was clearly erroneous.

■ Effective November 1, 1993, after the district court sentenced Holmes, U.S.S.G. § 2D1.1(c) now provides that the district court should treat each dose of LSD as weighing 0.4 milligrams. *See id.* App. C, Amendment 488. Applying this newly-adopted provision to Holmes' 213 doses would result in a total weight of .0852 grams. This lower weight would make him eligible for a shorter prison term. The district court has discretion to apply Amendment 488 retroactively. Therefore, we remand the case to the district court in order to allow that court to consider, in the exercise of its discretion, whether it should apply Amendment 488 retroactively to reduce Holmes' sentence. *See United States v. Coohey,* 11 F.3d 97, 101 (8th Cir.1993).

### D. Failure to Depart Downward

■ Holmes argues that the trial court improperly failed to depart downward because of the government's outrageous con-

duct of selecting a protected location as the site of the second drug transaction.[6] *See* 18 U.S.C. § 3553(b) (1988); U.S.S.G. § 5K2.0. The trial court was aware that he could depart downward,[7] and therefore, we cannot review his refusal to depart downward. *See United States v. Evidente,* 894 F.2d 1000, 1003–05 (8th Cir.) (holding that appellate court may not review trial court's decision not to depart so long as the trial court realizes that it has authority to depart), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990).

### III. CONCLUSION

Accordingly, we affirm the conviction and sentence, but we remand to the district court to consider whether Amendment 488 should apply retroactively to reduce Holmes' sentence.

---

**6.** Section 2D1.2(a)(1) provides that the trial court add two levels to the base offense level if the sale of narcotics "involv[es] a protected location." It is undisputed that § 2D1.2(a)(1) applies to the second drug transaction because the Family Fun Center is a protected location. *See* 21 U.S.C. § 860(a). Holmes apparently abandoned his claim that the trial court improperly applied § 2D1.2(a)(1). *See* Appellant's Reply Br. at 14 ("Although Holmes was not aware that the Family Fun Center was a protected location, that is not the argument being presented by Holmes.").

Nevertheless, the trial court properly applied § 2D1.2(a)(1).

**7.** At the sentencing hearing, the trial court stated: "I have carefully reviewed the brief submitted by [Holmes'] counsel in support of your motion for downward departure. Having considered the factors in there, and having in mind the evidence that was adduced at trial, the court finds that there are no valid reasons in this case for downward departure." Tr. at 649.