UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2317
UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTOPHER LEE BOOT,

Defendant, Appellant.

ERRATA SHEET

The opinion of this Court, issued June 7, 1994, is amended as
follows:

Page 4, n.1, last line should read: . . . comment. (backg'd.).

Page 7, l.5 from bottom should read: . . . comment. (backg'd.).

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-2317
UNITED STATES OF AMERICA,

Appellee,

v.

CHRISTOPHER LEE BOOT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Cyr, Circuit Judge.

Richard S. Emerson, Jr., with whom Childs, Emerson, Rundlett,

Fifield & Childs was on brief for appellant.

Michael M. DuBose, Assistant United States Attorney, with whom

Jay P. McCloskey, United States Attorney, was on brief for appellee.

June 7, 1994

CYR, Circuit Judge. After the district court reduced
CYR Circuit Judge

its original sentence in response to a recent amendment to the

Sentencing Guidelines, see United States Sentencing Commission,

Guidelines Manual 2D1.1 (Nov. 1993), defendant Christopher Lee

Boot brought the present appeal challenging the court's concur-

rent refusal to reduce his prison term below the minimum mandated

by statute. Finding no error, we affirm.

I

BACKGROUND

Appellant Boot pled guilty to distributing 11.6 grams

of lysergic acid diethylamide (LSD) within 1000 feet of a school.

See 21 U.S.C. 841(a)(1); 860(a) (1993). For purposes of

determining both the statutory mandatory minimum sentence ("MMS"-

), see id. 841(b)(1)(B)(v) (prescribing five-year MMS for

distributing "1 gram or more of a mixture or substance containing

a detectable amount" of LSD), and the applicable Guidelines

sentencing range (GSR), see U.S.S.G. 2D1.1(c) (Nov. 1991), the

district court included the entire weight of the carrier medium

used to distribute the 599 doses of LSD. See Chapman v. United

States, 500 U.S. 453, 468 (1991) (broadly construing "mixture or

substance," in 21 U.S.C. 841(b)(1)(B)(v), as "requir[ing] the

weight of the carrier medium to be included"); U.S.S.G. 2D1.1,

footnote * (Nov. 1991) ("Unless otherwise specified, the weight

of a controlled substance set forth in the [Drug Quantity Table]

3

refers to the entire weight of any mixture or substance contain-

ing a detectable amount of the controlled substance."); id.,

comment. (backg'd.). (n.1) (Nov. 1991) ("'Mixture or substance'

as used in this guideline has the same meaning as in 21 U.S.C.

841."). As a result, the 121-month prison term originally

imposed under the Guidelines (BOL: 32; CHC: I; GSR: 121-151

months) trumped the five-year MMS required under 21 U.S.C.

841(b)(1)(B)(v) for distributing one gram or more of LSD. See

U.S.S.G. 5G1.1(c).

Effective November 1993, however, the Sentencing

Commission amended U.S.S.G. 2D1.1 ("Amendment 488"), see 28

U.S.C. 994(p) (empowering Commission to promulgate amendments

to U.S.S.G., subject only to express congressional "veto"), by

prescribing a somewhat less stringent (0.4 milligram "per dose")

formula for calculating LSD quantity than the regime upheld in

Chapman.1 The Commission has ordained that its new 0.4 milli-

1The Commission spelled out the competing policy goals
addressed by Amendment 488 in new application note 18:

Because the weights of LSD carrier media vary
widely and typically far exceed the weight of the
controlled substance itself, the Commission has deter-
mined that basing offense levels on the entire weight
of the LSD and carrier medium would produce unwarranted
disparity among offenses involving the same quantity of
LSD (but different carrier weights), as well as sen-
tences disproportionate to those for other, more dan-
gerous controlled substances, such as PCP. Consequent-
ly, in cases involving LSD contained in a carrier
medium, the Commission has established a weight per
dose of 0.4 milligram for purposes of determining the
base offense level.

4

gram per-dose formula may receive retroactive application in

appropriate circumstances to effect reductions in sentences

previously imposed. See U.S.S.G. 1B1.10(a), (d) (1993); 18

U.S.C. 3582(c)(2); United States v. Holmes, 13 F.3d 1217, 1222

(8th Cir. 1994) (district courts have discretion to apply Amend-

ment 488 retroactively in appropriate circumstances).2

The dosage weight of LSD selected exceeds the Drug
Enforcement Administration's standard dosage unit for
LSD of 0.05 milligram (i.e., the quantity of actual LSD

per dose) in order to assign some weight to the carrier
medium. Because LSD typically is marketed and consumed
orally on a carrier medium, the inclusion of some
weight attributable to the carrier medium recognizes
(A) that offense levels for most other controlled
substances are based upon the weight of the mixture
containing the controlled substance without regard to
purity, and (B) the decision in Chapman v. United

States, 111 S. Ct. 1919 (1991) (holding that the term

"mixture or substance" in 21 U.S.C. 841(b)(1) in-
cludes the carrier medium in which LSD is absorbed).
At the same time, the weight per dose selected is less
than the weight per dose that would equate the offense
level for LSD on a carrier medium with that for the
same number of doses of PCP, a controlled substance
that comparative assessments indicate is more likely to
induce violent acts and ancillary crime than is LSD.
(Treating LSD on a carrier medium as weighing 0.5
milligram per dose would produce offense levels equiva-
lent to those for PCP.) Thus, the approach decided
upon by the Commission will harmonize offense levels
for LSD offenses with those for other controlled sub-
stances and avoid any undue influence of varied carrier
weight on the applicable offense level.

U.S.S.G. 2D1.1, comment. (n.18).

2Section 3582 provides, in pertinent part:

The court may not modify a term of imprisonment once it
has been imposed except that
....

5

Absent the MMS complication posed by 21 U.S.C.

841(b)(1)(B)(v), Amendment 488 would have resulted in a dramat-

ic decrease in appellant's prison sentence, since it sliced the

GSR from 121-151 months (11.6 grams of LSD) to 27-33 months

(0.239 gram). Due to 21 U.S.C. 841(b)(1)(B)(v), however, the

district court refused to reduce Boot's prison term below the

five-year MMS. See U.S.S.G 5G1.1(b) ("Where a statutorily

required minimum sentence is greater than the maximum of the

applicable guideline range, the statutorily required minimum

sentence shall be the guidelines range.").

II

DISCUSSION

The long and the short of the district court ruling was

that the LSD quantity calculation is controlled by Chapman for

MMS purposes and by Amendment 488 for GSR purposes. Boot coun-

(2) in the case of a defendant who has been
sentenced to a term of imprisonment based on a sentenc-
ing range that has subsequently been lowered by the
Sentencing Commission pursuant to 28 U.S.C. 994(o),
upon motion of the defendant or the Director of the
Bureau of Prisons, or on its own motion, the court may
reduce the term of imprisonment, after considering the
factors set forth in section 3553(a) to the extent that
they are applicable, if such reduction is consistent
with applicable policy statements issued by the Sen-
tencing Commission.

18 U.S.C. 3582(c)(2).

6

ters that by permitting Amendment 488 to take effect without

modification in November 1993, Congress evinced its clear inten-

tion to establish a unitary per-dose "mixture and substance"

formula for calculating LSD weight in MMS and GSR sentencings

alike. Thus, unless Amendment 488 is to be converted into an

instrument for promoting sentencing disparity, congressional

acquiescence in its adoption must be considered tantamount to

legislative displacement of the Chapman regime. We do not

agree.3

Although the precise issue presented is one of first

impression in the courts of appeals,4 the Supreme Court in

Chapman concluded that Congress intended, at the time it enacted

3Contrary to Boot's contention, Amendment 488, as presently
interpreted, eliminates considerable past and future sentencing

disparity in LSD cases, see U.S.S.G. 2D1.1, comment. (n.18), by

substituting, in all non-MMS cases, a uniform 0.4 milligram per-
dose formula for calculating the LSD "mixture or substance"
weight in place of the entire actual weight of the LSD and its
carrier medium. See supra note 1. The very substantial 61-month

reduction in Boot's sentence underscores the point. Further
efforts at reducing sentencing disparity in LSD cases must await
improved coordination between Amendment 488 and its preemptive
counterpart the MMS regime long recognized as an "ad hoc
deviation" from the unitary policy goals of the Sentencing
Guidelines, United States v. McFadden, 13 F.3d 463, 468 (1994)

(Breyer, C.J., dissenting).

4No district court has yet adopted the unitary approach
advocated by Boot. See United States v. Reddick, F. Supp.

, (W.D.N.Y. 1994) [1994 U.S. Dist. LEXIS 5978, at * 15
(W.D.N.Y. Apr. 20, 1994)]; United States v. Neal, F. Supp.

, (C.D. Ill. 1994) [1994 U.S. Dist. LEXIS 4101, at * 3-4
(C.D. Ill. Mar. 29, 1994)]; Woolston v. United States, 840 F.

Supp. 1, (D. Me. 1993). Cf. United States v. Tucker,

F.3d , (7th Cir. 1994) [1994 U.S. App. LEXIS 5408, at * 6-
7 (7th Cir. Mar. 23, 1994)].

7

the MMS statute in 1986, see Anti-Drug Abuse Act of 1986, Pub. L.

99-570, 100 Stat. 3207 (1986), that the pivotal term "mixture or

substance containing a detectable amount" of controlled substance

required the sentencing court to include the entire weight of the

LSD and its carrier medium. Chapman, 500 U.S. at 461 ("Congress

adopted a 'market-oriented' approach to punishing drug traffick-

ing," and intended courts to sentence defendants "according to

the weight of the drugs in whatever form they were found cut

or uncut, pure or impure, ready for wholesale or ready for

distribution at the retail level.").

III

CONCLUSION

Until the Supreme Court or the Congress revisits the

issue, Chapman governs the meaning of the term "mixture or

substance" in 21 U.S.C. 841(b)(1)(B)(v), as the Commission

itself acknowledged when it promulgated Amendment 488 in November

1993: "Nonetheless, this [new Guidelines] approach does not

override the applicability of 'mixture or substance' for the

purpose of applying any mandatory minimum sentence (see Chapman;

5G1.1(b))." U.S.S.G. 2D1.1, comment. (backg'd.). (n.18).

Without more and there is no more we conclude that Con-

gress simply acquiesced in the restrictive reach of Amendment 488

duly noted by the Commission in application note 18. Id.

8

Affirmed.

9