UNITED STATES of America

v.

Stephen Russell PIRNAT.

Crim. No. 1:82cr0311.

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 11, 1994.

**996**

Helen Fahey, U.S. Atty., Thomas M. Hollenhorst, Asst. U.S. Atty., Alexandria, VA, for plaintiff.

Pleasant Brodnax, III, Alexandria, VA, for defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

#### Introduction

■ This matter is before the Court on a motion to reduce sentence pursuant to Rule 35, Fed.R.Crim.P. At issue is whether a retroactive amendment to the United States Sentencing Guidelines ("Sentencing Guidelines") controls the way in which the carrier medium is to be taken into account in calculating the total weight of LSD attributable to a defendant for purposes of determining whether a Title 21 mandatory minimum sentence is applicable. *See* 21 U.S.C. §§ 841 and 846. For the reasons that follow, the Court concludes that the Sentencing Guidelines' new LSD carrier medium rule, which assumes a standard 0.4 milligram per dose carrier medium weight, does not trump the statutory rule requiring use of the actual weight of the carrier medium. Thus where, as here, the mandatory minimum sentence is triggered by the statutory rule, but not by the Sentencing Guidelines rule, the former controls and the mandatory minimum sentence must be imposed.

#### I.

From early October, 1991 through mid January, 1992, defendant Steffan Russell Pirnat and others were part of an LSD drug trafficking conspiracy. Defendant's chief involvement is traceable to a meeting at a Virginia restaurant in October 1991, where defendant informed an undercover Drug Enforcement Administration agent that he and his confederates could convert crystal LSD into individual dosage units for resale. At this and a subsequent meeting four days later, defendant agreed to sell the agent 10,-000 dosage units of LSD, as well as some additional LSD in crystal form. The sale was consummated and laboratory analysis later indicated that the total weight of the LSD involved, including the weight of the carrier medium, was 61.53 grams.

On July 29, 1992, defendant waived indictment and pled guilty to a one count criminal

information charging him with conspiracy to distribute ten (10) grams or more of a mixture or substance containing a detectable amount of LSD, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. The Court ordered the preparation of a Presentence Investigation Report ("PSIR"). At that time (1992), the carrier medium weight was appropriately included in calculating total LSD weight for both Sentencing Guideline purposes,[1] as well as for determining the applicability of Title 21 mandatory minimum sentences.[2] When completed, the PSIR correctly concluded that defendant's criminal history category was III and his base offense level 34, the offense level in U.S.S.G. § 2D1.1 attributable to 61.53 grams of LSD, including the weight of the carrier medium. Thus, based on the Guidelines then in effect, defendant's Sentencing Guidelines range was 151 to 188 months.[3] *See* U.S.S.G. Ch. 5, Part A (1992). The total weight of LSD attributable to defendant—61.53 grams—was also sufficient to trigger the ten year mandatory minimum sentence.[4] But because defendant's

Sentencing Guidelines range exceeded the statutory ten year mandatory minimum sentence, the Court was required to impose a sentence within the Guideline range. Accordingly, in October 1992, the Court sentenced defendant to 151 months imprisonment, to be followed by five (5) years of supervised release.[5] The Court also imposed a $50 special assessment pursuant to 18 U.S.C. § 3013(a)(2)(A), but declined to impose a punitive fine or an additional fine to cover the costs of incarceration or supervised release in light of defendant's limited assets.

Thereafter, in May 1993, the Sentencing Commission amended U.S.S.G. § 2D1.1, the provision that had governed defendant's Guideline sentencing range. The amendment changed the Sentencing Guidelines rule requiring that the actual weight of any carrier medium be considered in calculating the total LSD to be attributed to a defendant. The new rule, citing the inherent arbitrariness of using the actual weight of the carrier medium to determine the applicable Guideline sentencing range,[6] requires instead the

---

1. *See* U.S.S.G. § 2D1.1 Note * (Nov.1992) ("Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the *entire weight* of any mixture or substance containing a detectable amount of the controlled substance.") (emphasis added).

2. *See* 21 U.S.C. § 841(b)(1)(A)(v) and 21 U.S.C. § 846; *see also Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

3. This range corresponds to criminal history category III and offense level 32, which was defendant's total adjusted offense level after a two level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. Defendant unsuccessfully argued for a further offense level reduction on the ground that he played only a minimal or minor role in the LSD conspiracy. *See* U.S.S.G. § 3B1.2.

4. Defendant pled guilty to a one count criminal information charging him with participating in a conspiracy to distribute ten (10) grams or more of a mixture or substance containing a detectable amount of LSD. The statute defining the underlying offense, 21 U.S.C. § 841(b)(1)(A)(v), provides that any defendant who distributes, or *inter alia* possesses with intent to distribute, 10 grams or more of a mixture or substance containing a detectable amount of LSD must be sentenced to a term of imprisonment of not less than ten years. Section 846 of Title 21 makes this mandatory minimum sentence applicable to individu-

als, like defendant, who conspire to commit the offenses enumerated in § 841.

5. As a special condition of his period of supervised release, defendant was directed to participate in and successfully complete a program of drug testing and rehabilitation, at the direction and discretion of the Probation Officer.

6. *See* U.S.S.G. § 2D1.1, Application Note 18. Prior to the amendment of § 2D1.1, the courts of appeals addressing the issue, including the Fourth Circuit, had held that the weight of the LSD and the actual weight of the carrier medium should be used to determine the appropriate Guideline sentencing range. *See United States v. Daly*, 883 F.2d 313, 316–18 (4th Cir.1989), *cert. denied*, 496 U.S. 927, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990); *see also United States v. Larsen*, 904 F.2d 562, 563 (10th Cir.1990), *cert. denied*, 501 U.S. 1206, 111 S.Ct. 2800, 115 L.Ed.2d 973 (1991); *United States v. Elrod*, 898 F.2d 60, 61–63 (6th Cir.), *cert. denied*, 498 U.S. 835, 111 S.Ct. 104, 112 L.Ed.2d 74 (1990); *United States v. Bishop*, 894 F.2d 981, 985–86 (8th Cir.), *cert. denied* 498 U.S. 836, 111 S.Ct. 106, 112 L.Ed.2d 77 (1990); *United States v. Rose*, 881 F.2d 386, 388–89 (7th Cir.1989); *United States v. Taylor*, 868 F.2d 125, 127–28 (5th Cir. 1989).

The courts' approach often led to disparate sentences based not on the amount of actual LSD involved, but on the weight of the carrier medi-

use of a standard carrier medium weight of 0.4 milligrams per dose[7] of LSD.[8] *See* U.S.S.G. Amendment 488 (1993).

The amended rule, applied to defendant, yields a significantly lower total LSD weight and hence a lower Sentencing Guidelines range. Specifically, the amended § 2D1.1, applied to defendant's case, results in attribution to defendant of only 4 grams of LSD,[9] not 61.53 grams. Accordingly, the corresponding sentencing range is 70 to 87 months, rather than the 151 to 188 month range that results from including the total actual weight of the LSD and carrier medium. And significantly, the 4 grams of LSD attributable to defendant resulting from the use of a 0.4 milligram per dose standard medium weight as prescribed by the amend-

ed § 2D1.1 does not trigger the ten year mandatory minimum sentence at 21 U.S.C. § 841(b)(1)(A)(v).

Not surprisingly, therefore, defendant now seeks reconsideration of his sentence, claiming that the amended U.S.S.G. § 2D1.1 applies with respect both to the determination of the Sentencing Guidelines range and to the determination of whether the ten year mandatory minimum sentence is required. Thus, he claims that he should be sentenced in the 70–87 month range. The government disagrees, arguing instead that the amended § 2D1.1, even if retroactive, does not trump the statutory rule requiring that total LSD weight include the actual weight of the carrier medium.

---

um. The Fourth Circuit recognized this in *Daly*, quoting from a letter from William W. Wilkins, Jr., Chairman of the Sentencing Commission, to Senator Joseph Biden, Jr.:

> [i]ncluding carrier weight as part of the LSD mixture may significantly affect the applicable sentence under the guidelines . . ., depending on the nature of the carrier. For example, a sugar cube weighs approximately 2,270 mg., a piece of blotter paper the size used to hold one dose weighs about 14 mg., and a dose of [uncut] LSD weighs about .05 mg. Therefore, if the carrier was weighed as part of the mixture, a person selling 100 doses of LSD would have an offense level of 36, or 26, or 12, depending on whether the LSD was impregnated on sugar cubes, blotter paper, or was in liquid form.

*Daly*, 883 F.2d at 316, (quoting Letter of April 26, 1982 from Commission Chairman William J. Wilkins, Jr., to Senator Joseph R. Biden, Jr.). This was the case in *Daly* itself, where defendant's adjusted base offense level was 34 when the weight of the carrier medium was considered for sentencing purposes, but 24 when only the weight of the LSD without the carrier medium was considered. *Id.* at 315.

7. The 0.4 milligrams per dose figure results from the Sentencing Commission's effort to ensure that the varying carrier medium weights would not operate to distort the Sentencing Guidelines' treatment of LSD offenses, and that this treatment would properly reflect LSD's pernicious effects as compared to PCP. Thus, the Sentencing Commission noted that equivalent offense levels for LSD and PCP would result from using a standard 0.5 milligram per dose carrier medium weight for LSD. Because comparative assessments indicate that PCP use is somewhat more likely to result in violent acts and ancillary crime than is LSD use, the Commission selected a standard carrier medium weight for LSD that is lower than 0.5 milligrams per dose, thereby

"harmoniz[ing] offense levels for LSD offenses with those for other controlled substances and avoid[ing] an undue influence of varied carrier weight on the applicable offense level." U.S.S.G. § 2D1.1 Application Note 18 (1993), Amendment 488 (1993).

In some instances, the number of doses cannot be readily determined. When this occurs, the Sentencing Guidelines presume that each 1/4 inch by 1/4 inch section of blotter paper is equal to one dose. U.S.S.G. Amendment 488 (1993). The amendment also notes that in the case of liquid LSD, or LSD that has not been placed onto a carrier medium, an upward departure may be appropriate, since using the weight of the LSD alone to calculate the offense level may not adequately reflect the seriousness of the offense. *Id.*

8. The Sentencing Commission rejected arguments to exclude the weight of the carrier medium altogether, stating that because LSD typically is marketed and consumed in a carrier medium, inclusion of some weight attributable to a carrier medium recognizes (a) that offense levels for most other controlled substances are based upon the weight of a mixture containing the controlled substance without regard for purity, and (b) comports with the Supreme Court's determination in *Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) that the weight attributable to the carrier medium should be included in applying any mandatory minimum sentence. U.S.S.G. § 2D1.1; Application Note 18 (1993).

9. Ten thousand dosage units were attributed to defendant; multiplying these dosage units by the standard per dose weight of 0.4 milligrams per dose results in a total of 4 grams of LSD.

## II.

■ The threshold question is whether the amended U.S.S.G. § 2D1.1 should be given retroactive effect. The Sentencing Commission provided that its Guidelines amendments of May 1, 1993 would generally take effect on November 1, 1993. *See* 28 U.S.C. § 994(p); 58 Fed.Reg. 27148. Defendant was sentenced in October 1992, and thus his sentence would be affected by the amendment only if the amendment is given retroactive effect. Retroactive application of statutes is generally disfavored. *See United States v. Magnolia Petroleum Co.,* 276 U.S. 160, 162–63, 48 S.Ct. 236, 237, 72 L.Ed. 509 (1928); *see also Leland v. Federal Ins. Adm'r.,* 934 F.2d 524, 527 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 417, 116 L.Ed.2d 437 (1991). Yet, Congress has given the Sentencing Commission discretionary authority to give Sentencing Guidelines amendments retroactive effect, *Braxton v. United States,* 500 U.S. 344, 348, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991); *see United States v. Coohey,* 11 F.3d 97, 101 (8th Cir.1993). For its part, the Sentencing Commission has indicated that district courts have the discretion to reduce a defendant's sentence retroactively pursuant to the amended U.S.S.G. § 2D1.1, as set forth at U.S.S.G. Amendment 488. U.S.S.G. § 1B1.10(d).[10] Section 3582(c)(2) of Title 18 [11] instructs sentencing courts to consider the factors set forth at 18 U.S.C. § 3553(a) in deciding whether to reduce a defendant's sentence due to the subsequent amendment of an applicable sentencing guideline. These factors are: (1) the nature and circumstances of the offense and the history and character-istics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of the defendant; (3) the kinds of sentences available; (4) the applicable sentencing range in effect on the date the defendant is sentenced; (5) any pertinent policy statement issued by the Sentencing Commission that is in effect on the date the defendant is sentenced; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a) (1994). Sentencing courts deciding the retroactivity issue should also consider the sentence that would have been imposed had the amended Sentencing Guidelines provision been in effect at the time of a defendant's original sentencing. U.S.S.G. § 1B1.10(b).

■ No one of the § 3553 factors is determinative, nor are all of the factors applicable in every case. Rather, a court's task is to assess the importance of the applicable factors in the circumstances of each case. And it is also the task of courts in this regard, as in all aspects of the sentencing decision, to do justice by endeavoring always to treat like cases alike.

■ In this instance, a weighing of the § 3553 factors points persuasively to giving the amended § 2D1.1 retroactive effect, thereby extending its application to defendant. The laudable goal of the Sentencing Guidelines is the elimination of disparity in

---

10. When the Sentencing Guidelines range applicable to a defendant has been subsequently lowered as a result of certain specified amendments, including Amendment 488 to U.S.S.G. § 2D1.1, district courts "may [ ] consider []" reducing a defendant's sentence pursuant to 18 U.S.C. § 3582(c)(2). U.S.S.G. § 1B1.10(a) and (d); *see, e.g., United States v. Holmes,* 13 F.3d 1217, 1222 (8th Cir.1994) (remanding to the district court to consider, in its discretion, whether Amendment 488 should be retroactively applied to reduce defendant's sentence); *United States v. Coohey,* 11 F.3d 97, 101 (8th Cir.1993) (same).

11. 18 U.S.C. § 3582(c)(2) provides, in relevant part:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(*o*), upon motion of the defendant of the Director of the Bureau of Prisons, or in its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

sentencing.[12] And that indeed was the objective of the amended § 2D1.1, namely the elimination of sentencing disparities between defendants, with similar records, who have been found guilty of similar LSD offenses. U.S.S.G. § 2D1.1 Application Note 18 (1993). To refuse to give the amended § 2D1.1 retroactive effect would frustrate the attainment of the Sentencing Guideline's goal by perpetuating sentencing disparities in two ways. First, the sentencing disparities that often occurred under the old rule in LSD cases involving similar amounts of LSD, but different carrier media, would remain unremedied. *See Daly,* 883 F.2d at 316 ("Where LSD is involved, sentences are liable to be widely disparate—again depending on the substance in which the drug is found."). Second, a prospective only application of amended § 2D1.1 would lead to a general disparity in LSD sentences between those sentences imposed prior to the amendment and those imposed after the amendment. And, given the severity of typical LSD sentences, this disparity is all the more obnoxious. Also militating in favor of retroactivity is that defendant's Sentencing Guidelines range would have been significantly lower had the amended section § 2D1.1 been in effect at the time of defendant's sentencing. Indeed, the retroactive application of § 2D1.1 halves defendant's Sentencing Guidelines range, cutting it from 151–188 months to 70–87 months. In short, courts' obligation to ensure that like cases be treated alike counsels convincingly in favor of retroactive effect for amended § 2D1.1 and in favor of reconsideration of defendant's sentence.

## III.

Retroactive effect for the amended § 2D1.1 benefits defendant by reducing his Sentencing Guideline range from 151–188 months to 70–87 months. But this does not end the matter for there is still the question whether the statutory mandatory minimum

18 U.S.C. § 3582(c)(2) (1994).

**12.** *See* United States Sentencing Guidelines, *Basic Approach* (Policy Statement) (indicating that Congress' and the Sentencing Commission's goal in promulgating Guidelines is the creation of

sentence applies to defendant. Indeed, this is the central question presented, namely whether the rule of the amended § 2D1.1 relating to accounting for the carrier medium weight governs also in determining whether the mandatory minimum statute is triggered. The starting point for this analysis must be the language of the mandatory minimum statute, 21 U.S.C. § 841(b)(1), and the Supreme Court's interpretation of that language in *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

The relevant statutory language here is "mixture or substance containing a detectable amount of [LSD]." 21 U.S.C. § 841(b)(1). While this language plainly contemplates a consideration of some carrier medium weight for sentencing purposes, its plain meaning alone does not prescribe precisely what weight should be used in determining the total weight of the LSD substance or mixture. It is this statutory construction question that engaged the Supreme Court in *Chapman.* There, petitioner Chapman and two other individuals were convicted of selling 10 sheets, or 1000 doses, of LSD in violation of 21 U.S.C. § 841. While the weight of the LSD was only 50 milligrams, the district court used the combined 5.7 gram weight of the LSD and the blotter paper carrier-medium for sentencing purposes, resulting in the imposition of a five year mandatory minimum sentence. *Chapman,* 500 U.S. at 454–58, 111 S.Ct. at 1922–23. Chapman appealed, arguing that the weight of the blotter paper should not be considered for mandatory minimum sentencing purposes. The Seventh Circuit Court of Appeals, sitting *en banc,* rejected this argument, holding that the language "mixture or substance containing a detectable amount" of LSD means that the total weight of any carrier medium must be included and that Congress had a rational basis for including the actual weight of the carrier medium, such that the statute, so construed, did not violate Fifth Amendment

"reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses by similar criminal offenders").

Due Process. *Id.* at 458–60, 111 S.Ct. at 1923.

The Supreme Court affirmed the Seventh Circuit on both grounds. In reaching this result, the Supreme Court broadly held that a "mixture or substance containing a detectable amount" of LSD, as used to determine the amount of LSD attributable to a defendant for purposes of imposing statutory mandatory minimum sentences pursuant to 21 U.S.C. §§ 841 and 846, includes the total weight of the LSD and the carrier medium. *Chapman,* 500 U.S. at 467–68, 111 S.Ct. at 1929.[13] This broad holding has been consistently read by lower courts to require use of the actual weight of the LSD and the carrier medium for the purpose of determining whether a mandatory minimum sentence is applicable.[14]

Significantly, the *Chapman* Court recognized that including the weight of the carrier medium for mandatory minimum sentencing purposes could result in disparate sentences for individuals who possessed the same amount of actual LSD, but used different carrier mediums. *See Chapman,* 500 U.S. at 458 n. 2, 111 S.Ct. at 1924 n. 2.[15] Nonetheless, the Court concluded that Congress had a rational reason for requiring the weight of LSD to be measured according to its "street weight," including the total weight of the carrier medium. *Id.* at 464–67, 111 S.Ct. at 1927–28. In this regard, the Court noted that LSD was "like heroin or cocaine mixed with cutting agents," other drugs where Congress clearly intended that the dilutant, cutting agent, or carrier medium be included for sentencing purposes. *Id.* at 458–63, 111 S.Ct. at 1924–26.

At present, therefore, there are two apparently conflicting rules for how courts should account for carrier medium weight in LSD cases. In the Sentencing Guidelines context, amended § 2D1.1 requires use of a standard 0.4 milligrams per dose weight. In the mandatory minimum sentence context, *Chapman* requires use of the total weight of LSD and any carrier medium. There is no reason, in principle, for this conflict. On the contrary, both principle and sound public policy counsel in favor of using the same rule in apply-

13. In reaching this result, the Supreme Court noted that reading the phrase "mixture or substance" to include "blotter paper impregnated with LSD crystals" did not raise "grave doubts about the constitutionality of the provision." *Chapman,* 500 U.S. at 464, 111 S.Ct. at 1927 (quoting *United States v. Jin Fuey Moy,* 241 U.S. 394, 401, 36 S.Ct. 658, 659, 60 L.Ed. 1061 (1916)).

In the Supreme Court's view, carrier media such as blotter paper were "tool[s] of the trade" among LSD users and distributors, such that it was "rational" for Congress, and by implication, the Commission, to set penalties based on distributors' tools of choice. *Chapman,* 500 U.S. at 467–68, 111 S.Ct. at 1928. Further noted was the point that including the actual weight of the carrier medium for mandatory minimum sentencing purposes would rationally punish more heavily those who dealt in larger amounts of drugs. *Id.*

| Carrier | Weight of 100 doses | Base offense level | Guidelines range (months) |
|---|---|---|---|
| sugar cube | 227 gr. | 36 | 188–235 |
| blotter paper | 1.4 gr. | 26 | 63–78 |
| gelatin capsule | 225 mg. | 18 | 27–33 |
| pure LSD | 5 mg. | 12 | 10–16 |

*Chapman,* 500 U.S. at 458 n. 2, 111 S.Ct. at 1924 n. 2.

Also noted was that disparate sentences could just as easily result in sentencings based on the weight of LSD alone, based on disparities in the

14. *See, e.g., United States v. Boot,* 25 F.3d 52 (1st Cir.1994) (interpreting *Chapman* as requiring "the sentencing court to include the *entire* weight of the LSD and its carrier medium" for mandatory minimum sentencing purposes) (emphasis added); *United States v. Holmes,* 13 F.3d 1217, 1221 (8th Cir.1994) (affirming district court's inclusion of the weight of the blotter paper in an LSD sentencing, but remanding case to allow district court to determine if amended § 2D1.1 should be retroactively applied); *United States v. Coohey,* 11 F.3d 97, 100 (rejecting argument that inclusion of actual carrier medium weight under § 2D1.1 violated defendant's Fifth Amendment due process rights).

15. The *Chapman* court incorporated a chart illustrating the disparate sentences individuals selling 100 doses of LSD could receive based on the carrier medium used:

amount of pure LSD that can be extracted from a given carrier medium. *See id.* at 465–67, 111 S.Ct. at 1928.

ing both mandatory minimum sentences and the Sentencing Guidelines, as to do otherwise creates the very disparities that Congress sought to eradicate through the promulgation of the Sentencing Guidelines.[16] And, as between the two carrier medium weight rules, the Sentencing Guidelines' rule of 0.4 milligrams per dose is preferable for all the reasons cited for the rule's adoption. *See* Amendment 488 (1993). Regrettably, however, this choice cannot be made by a district court, nor even by the Sentencing Commission, which recognizes that the *Chapman* rule requiring use of actual carrier medium weight trumps the Sentencing Guidelines rule where the issue is the applicability of mandatory minimum sentences.[17] As the First Circuit recently noted in a quite similar case, "[u]ntil the Supreme Court or Congress revisits the issue, *Chapman* governs the meaning of the term 'mixture or substance' in 21 U.S.C. § 841" for the purpose of applying any mandatory minimum sentence. *United States v. Boot,* 25 F.3d 52, 55. Accordingly, despite the reduction in the Sentencing Guidelines range applicable to defendant pursuant to amended § 2D1.1, defendant is still subject to the 120 month manda-

tory minimum sentence set forth at 21 U.S.C. § 841(b)(1)(A)(v).

An appropriate Order has issued.

---

16. Interestingly, the Sentencing Commission, in promulgating amended § 2D1.1, created the potential for yet another sentencing disparity by making the retroactive application of the section discretionary with the sentencing court. Thus, disparities may arise in the future because some courts will choose to apply amended § 2D1.1 retroactively, while others will not. *See, e.g., United States v. Telman,* 28 F.3d 94 (10th Cir. 1994) (holding that district court did not abuse its discretion in deciding, due to defendant's personal and offense characteristics, not to reduce defendant's sentence pursuant to the amended § 2D1.1).

17. *See* U.S.S.G. § 5G1.1(b) ("Where the statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.")

In amending § 2D1.1 the Sentencing Commission explicitly indicated that its amendment did not override the *Chapman* holding as to the meaning of "mixture or substance." *See* U.S.S.G. § 2D1.1 Application Note 18 (1993); Amendment 488 (1993). Thus, it seems clear that the Sentencing Commission, in promulgating the amended § 2D1.1, did not purport to construe the statutory phrase "mixture or sub-

stance." Rather, the Commission focused on amending the Guidelines range applicable in LSD cases.

Further, in light of the Commission's commentary indicating that the method of calculating LSD weights for Sentencing Guidelines purposes does not override the meaning of "mixture or substance" as defined in *Chapman,* defendant's argument that Congress, in allowing Amendment 488 to be enacted without modification, simply acquiesced in the displacement of *Chapman* by the amended § 2D1.1, is not persuasive. *See United States v. Dimeo,* 28 F.3d 240, 241 (1st Cir.1994) (rejecting argument that Congress, by permitting Amendment 488 to take effect "signaled its intention that LSD weight be calculated under a unitary method" for both Guideline Sentencing purposes and mandatory minimum sentencing purposes, "thereby implicitly overruling *Chapman*"); *see also United States v. Neal,* 846 F.Supp. 1362, 1363 (C.D.Ill.1994) ("The commentary specifically indicates that the U.S. Sentencing Commission does not intend the statute governing mandatory minimum sentences to be affected by the revised method for calculating LSD weights. For this Court to hold otherwise would result in the nullification of the *Chapman* decision as it relates to statutorily imposed mandatory minimum sentences....")