UNITED STATES of America,
Plaintiff–Appellee,

v.

Meirl Gilbert NEAL, Defendant–Appellant.

No. 94–1773.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1994.

Reargued En Banc Nov. 22, 1994.

Decided Feb. 2, 1995.

Byron G. Cudmore, Asst. U.S. Atty. (argued), Springfield, IL, for plaintiff-appellee.

Michael J. Costello (argued), Costello Law Office, Springfield, IL, for defendant-appellant.

Before POSNER, Chief Judge, and CUMMINGS, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Defendant Meirl Gilbert Neal was convicted of conspiracy to distribute and possession with intent to distribute LSD-laced blotter paper and received a statutory minimum sentence of ten years imprisonment. Neal contests his sentencing, arguing that the district court misapplied the Sentencing Guidelines by including the actual weight of the LSD carrier medium in ascertaining whether Neal merited a mandatory minimum sentence. We hold that the district court properly calculated Neal's sentence and therefore affirm.

I.

Understanding Neal's objection to his sentence requires a brief history of Congress's and the Sentencing Commission's approach to drug-related sentencing. In 1986, Congress adopted a "market-oriented" approach to punishing drug trafficking, see Anti–Drug Abuse Act of 1986, Pub.L. 99–570, 100 Stat. 3207 (1986), aimed at punishing retail and wholesale dealers "according to the weight of the drugs in whatever form they were found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level." Chapman v. United States, 500

U.S. 453, 461, 111 S.Ct. 1919, 1925, 114 L.Ed.2d 524 (1991). Acting under this principle, Congress set mandatory minimum sentences corresponding to the weight of a "mixture or substance containing a detectable amount" of various controlled substances, including LSD. See id. (citing 21 U.S.C. §§ 841(b)(1)(A)(i)–(viii) and (B)(i)–(viii)). The statutory provision at issue both here and in Chapman, 21 U.S.C. § 841(b)(1), provides for mandatory minimum sentences for distributing more than a certain amount of a "mixture or substance containing a detectable amount" of LSD. The Court, applying an "ordinary meaning" to the key terms "mixture" and "substance," concluded that the weight of the blotter paper containing LSD, and not the weight of the pure drug alone, determines eligibility for the mandatory minimum sentence. See Chapman, 500 U.S. at 461–63, 111 S.Ct. at 1925–26.

Until recently, the Sentencing Guidelines also used the entire weight of the "mixture or substance," including the weight of the carrier medium, to determine the applicable sentencing range for crimes involving LSD. See U.S.S.G. § 2D1.1 and commentary. Effective November 1, 1993, however, the United States Sentencing Commission amended § 2D1.1 by prescribing a uniform (and somewhat less stringent) formula for calculating LSD quantity. See United States v. Boot, 25 F.3d 52, 54 (1st Cir.1994). The new Guideline approach (Amendment 488) establishes a presumptive weight of 0.4 milligrams per dose of LSD, regardless of the carrier medium. U.S.S.G. § 2D1.1. The district courts have discretion to apply this new formula retroactively, see 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10(a) & (d), so that in appropriate circumstances a defendant may be considered for a reduction in a previously imposed sentence. United States v. Holmes, 13 F.3d 1217, 1222 (8th Cir.1994).

Defendant Neal was charged with conspiracy to distribute LSD, in violation of 21 U.S.C. § 846, and possession with intent to distribute LSD, in violation of 21 U.S.C. § 841(a)(1). Neal pleaded guilty to both counts on February 13, 1989. At sentencing, the district court held Neal accountable for blotter paper containing 11,456 doses or

"hits" of LSD. The actual weight (including the carrier medium) of the 11,456 doses that Neal had possessed and conspired to distribute was 109.51 grams. This weight gave Neal, who fell into the Criminal History III category because of prior drunk driving convictions, a base offense level of 36. The offense level was reduced by two points for Neal's acceptance of responsibility, resulting in a final offense level of 34 and a sentencing range of 188 to 235 months. Accordingly, the district court sentenced Neal to 192 months of imprisonment on each count (the sentences to run concurrently) and five years of supervised release.

On December 10, 1993, Neal filed a pro se motion to reduce his sentence because of the intervening amendment to the Sentencing Guidelines. The district court elected to apply the amendment retroactively and recalculated the weight of the 11,456 doses as 4.58 grams. The recalculation gave Neal a base offense level of 28. Subtracting three points for acceptance of responsibility (Neal was allowed an additional one-point reduction for a timely plea), the district court placed Neal at a final offense level of 25, which provides in the Criminal History III category a sentencing range of 70 to 87 months.

However, the district court held that it had to follow the *Chapman* definition of "mixture or substance" in calculating the weight of the LSD for determining the applicability of any minimum penalty under § 841(b)(1). The weight of the LSD blotter paper for which Neal was convicted, 109.51 grams, mandated a minimum sentence of ten years. 846 F.Supp. 1362. 21 U.S.C. § 841(b)(1)(A)(v) (providing for a mandatory minimum ten year sentence for conviction involving more than 10 grams of LSD); U.S.S.G. § 5G1.1(b). The court therefore set Neal's sentence at 120 months. Neal objected, asserting that court should have used the 4.58 gram calculation, which would require a mandatory minimum of only five years for a conviction in-

volving more than one gram of LSD, 21 U.S.C. § 841(b)(1)(B)(v), and allow the court to impose a sentence between 70 and 87 months. The court overruled Neal's objection and this appeal followed.

## II.

The sole issue on appeal is whether the district court properly determined that an amendment to the Sentencing Guidelines prescribing a presumptive per dose weight of LSD applies to the calculation of a defendant's base offense level but not to his eligibility for a statutory mandatory minimum sentence.[1] An interpretation of the Guidelines and its amendments presents a question of law which we review *de novo. United States v. Jones,* 983 F.2d 1425, 1429 (7th Cir.1993). The particular question raised here is one of first impression in our circuit. *Cf. United States v. Tucker,* 20 F.3d 242, 244 (7th Cir.1994) (making reference to the presumptive weight for LSD under the Guidelines in the context of determining whether a defendant was subject to a mandatory minimum sentence for distribution of cocaine); *United States v. Sassi,* 33 F.3d 56 (7th Cir. 1994) (table) (unpublished opinion, text at 1994 WL 450134, 1994 U.S.App. LEXIS 30412) (disposing of similar issues without published opinion).

Neal makes three basic arguments for using the per-dose weight calculation instead of the *Chapman* weight calculation in deciding whether to impose a mandatory minimum penalty for Neal's conduct under 21 U.S.C. § 841(b)(1). First, Neal submits that the presumptive weight approach reflected in U.S.S.G. § 2D1.1, as amended, applies to the determination of both a defendant's base offense level and his eligibility for the statutory mandatory minimum sentence. Neal argues that *Chapman* does not conflict with this interpretation because Congress, through its inaction, has accepted the Guidelines amendment as the authoritative definition of the

---

1. Neal also challenges the enhancement of his criminal history because the court calculated it based on Neal's prior alcohol related driving offenses. Neal asserts that including such convictions, where the defendant was arguably an alcoholic and unable to control his drinking, violates due process and equal protection rights

under the Fifth Amendment. The fact that we are upholding the mandatory minimum sentence renders the calculation of criminal history irrelevant and Neal's appeal on this point moot. We therefore express no opinion as to the merits of this argument.

phrase "mixture or substance" for purposes of both the Guidelines and the mandatory minimum sentencing scheme. Neal also maintains that to the extent *Chapman* requires inclusion of the weight of the carrier medium, the amended Guidelines' weight calculation does include, in part, the weight of the carrier and is thus merely an application of *Chapman*. Second, Neal suggests that the "dual weight" sentencing scheme used by the district court is so illogical and unjust that it violates the Due Process Clause. Third, Neal contends that the dual method of weight calculation under the amended Guidelines creates an ambiguity that requires us to invoke the rule of lenity and impose a lesser punishment. We address each argument in turn.

### A.

■ Under the district court's interpretation of federal law, a single amount of LSD is assigned two different weights for sentencing purposes: one weight for determining the base offense level under the Guidelines and another weight for determining eligibility for the mandatory minimum sentence provided in 21 U.S.C. § 841(b)(1)(A)(v). The Guidelines, as the Supreme Court has observed, "were meant to establish a range of determinate sentences for categories of offenses and defendants according to various specified factors," *Mistretta v. United States*, 488 U.S. 361, 368, 109 S.Ct. 647, 653, 102 L.Ed.2d 714 (1989), in order to provide certainty and fairness and to eliminate unwarranted disparities in the sentences imposed upon similarly situated defendants. *See* 28 U.S.C. § 991(b)(1)(B). At the same time, however, the Commission itself has long recognized that Congress has been of two minds with respect to sentencing federal criminals:

> The sentencing guidelines system is essentially a system of finely calibrated sentences. For example, as the quantity of drugs increases, there is a proportional increase in the sentence. In marked contrast, the mandatory minimums are essen-

tially a flat, tariff-like approach to sentencing. Whereas guidelines seek a smooth continuum, mandatory minimums result in "cliffs." The "cliffs" that result from mandatory minimums compromise proportionality, a fundamental premise for just punishment, and a primary goal of the Sentencing Reform Act.

United States Sentencing Commission, *Special Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* (summary) (August 1991); *see also United States v. McFadden*, 13 F.3d 463, 467–68 (1st Cir.1994) (Breyer, C.J., dissenting) (noting that mandatory minimum statutes represent an "ad hoc derivation" from the more general policy reflected in the Sentencing Guidelines). Though they seem to make an odd pair, it must be noted that the Guidelines and statutory mandatory minimum scheme were enacted by Congress almost simultaneously and continue to coexist, and sometimes overlap. Indeed, the Guidelines specifically contemplate conflict between the two schemes, and direct that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1.

The post-amendment Commentary[2] to § 2D1.1 clearly indicates that the Commission promulgated Amendment 488 in full recognition that it would create a "dual weight" system of calculating the weight of LSD for sentencing purposes and that where the Guidelines approach conflicted with the statutory mandatory minimum scheme, the latter would prevail. The first paragraph of that Commentary notes that "in cases involving LSD contained in a carrier medium, the Commission has established a weight per dose of 0.4 milligrams *for purposes of determining the base offense level.*" U.S.S.G. § 2D1.1 Commentary (emphasis supplied). The Commentary concludes by stating that "this approach *does not override* the applica-

---

**2.** Commentary in the Guidelines, at least if it is interpreting a specific guideline, is to be given the same force and effect as the Guidelines language itself unless the Commentary "violates the Constitution or a federal statute, or it is inconsis-

tent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1920, 123 L.Ed.2d 598 (1993); *United States v. Lamb*, 6 F.3d 415, 420 (7th Cir.1993).

bility of 'mixture or substance' for the purpose of applying any mandatory minimum sentence," citing both *Chapman* and U.S.S.G. § 5G1.1(b). *Id.* Even if an amendment to the Sentencing Guidelines could supercede the Supreme Court's interpretation of a separate statute, these two sentences make clear that the amendment to § 2D1.1 purported to do no such thing. In any event, this is not a case like *McFadden,* in which we might "read language in different, but related, statutes, so as best to reconcile those statutes, in light of their purposes and of common sense." 13 F.3d at 467 (Breyer, C.J., dissenting) (arguing that the majority's interpretation of the word "use" in a statute (18 U.S.C. § 924(c)) prescribing a mandatory minimum sentence to encompass "possession" unnecessarily swallows up a guideline (U.S.S.G. § 2D1.1(b)(1)) that distinguishes among different kinds of drug- and gun-related criminal behavior). Here, the Supreme Court has authoritatively construed the term "mixture or substance" in 21 U.S.C. § 841(b)(1)[3] to mean that "[s]o long as it contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence." *Chapman,* 500 U.S. at 459, 111 S.Ct. at 1924; *see also Boot,* 25 F.3d at 55 ("Until the Supreme Court or the Congress revisits the issue, *Chapman* governs the meaning of the term 'mixture or substance' in 21 U.S.C. § 841(b)(1)(B)(v), as the Commission itself acknowledged when it promulgated Amendment 488."). The Commission is without authority to override *Chapman.*[4] As Judge Easterbrook has noted, "[t]he Sentencing Reform Act creates only the power to guide judicial discretion within the statutory limits," *United States v. Seacott,* 15 F.3d 1380, 1392 (7th Cir.1994) (Easterbrook, J., concurring); it does not "vest in the Judicial Branch the legislative

responsibility for establishing minimum and maximum penalties for every crime." *Mistretta,* 488 U.S. at 396, 109 S.Ct. at 667. Congress has authorized the Commission to permit sentences lower than mandatory minima, 18 U.S.C. § 3553(c), but only within the parameters laid out by that statutory provision. *See id.* (authorizing departures for substantial assistance to the government and for mitigating circumstances not adequately taken into consideration in the formulation of the Guidelines); *see also* U.S.S.G. § 5K2.0. The Commission understood all of these limitations on its power, and the district court applied the relevant statute and guideline as both Congress and the Commission intended.

### B.

■ Neal next contends that using a presumptive weight to calculate the base offense level and the actual weight to determine eligibility for the mandatory minimum sentence creates an illogical and arbitrary distinction between defendants that violates the Due Process Clause of the Fifth Amendment. A statute runs afoul of the Due Process Clause only if it "manifests a patently arbitrary classification, utterly lacking in rational justification." *Weinberger v. Salfi,* 422 U.S. 749, 768, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975); *see also United States v. Lawrence,* 951 F.2d 751, 754 (7th Cir.1991). Moreover, the statute's justification need not be expressly articulated or readily apparent "so long as a court can divine some rational purpose." *United States v. Cyrus,* 890 F.2d 1245, 1248 (D.C.Cir.1989) (citation omitted).

■ In *Chapman,* the Supreme Court expressly found that Congress had a rational basis for the market-oriented sentencing scheme reflected in 21 U.S.C. § 841(b)(1)(B)(v):

---

3. In *Chapman,* the Supreme Court expressly interpreted only § 841(b)(1)(B)(v) and not § 841(b)(1)(A)(v). The two provisions, however, are nearly identical and only differ in what number of grams of LSD will result in what minimum sentence. No reason exists to interpret them differently, and Neal has not suggested that we do this.

4. Neal suggests that the per dose calculation, in assigning a presumptive weight of 0.4 milligrams per dose of LSD (a presumptive weight of 0.05

milligrams to the pure LSD dosage and 0.35 milligrams to the carrier), does "assign some weight to the carrier medium" and is therefore an appropriate interpretation of *Chapman.* Such a reading conflicts with the language of *Chapman* ("So long as it contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence.") and is an untenable reinterpretation that the Commission neither adopted nor could have adopted.

By measuring the quantity of drugs according to the "street weight" of the drugs in the diluted form in which they are sold, rather than according to the net weight of the active component, the statute and the Sentencing Guidelines increase the penalty for persons who possess large quantities of drugs, regardless of their purity. That is a rational sentencing scheme.

500 U.S. at 465, 111 S.Ct. at 1927–28. Subsequently, the Commission decided to establish a presumptive weight per dose of LSD for purposes of determining the defendant's base level "[b]ecause the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself." U.S.S.G. § 2D1.1 Commentary. As a result of this "dual weight" scheme, a defendant who is accountable for no more than approximately 104 doses on blotter paper like Neal's may receive a sentence ranging from probation to a few months imprisonment, see U.S.S.G. § 5C1.1, comment (n. 3), while a defendant who exceeds that threshold will qualify for a mandatory minimum five-year sentence.[5] In such circumstances, the statutory mandatory minimum creates a very steep "cliff" for the unlucky drug dealer who is caught distributing a few more doses than a more fortunate cohort. While this may be an ill-advised policy that metes out a severe punishment, it does have a rational basis—those who deal more LSD will be punished more heavily than those who deal less, and at a certain point there is a qualitative leap in the seriousness of the deed that will give rise to a sudden rather than an incremental increase. Such judgments are for Congress, not the courts, and we will not interfere with them.

### C.

■ Neal also asks us to invoke the rule of lenity in view of an alleged ambiguity engendered by using two different methods to determine the weight of LSD for sentencing purposes. "[A]mbiguity concerning the am-

bit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971). However, the rule of lenity is inapplicable unless there is a "grievous ambiguity or uncertainty in the language and structure of the Act," *Huddleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 1272, 39 L.Ed.2d 782 (1974), such that even after a court has "seize[d] everything from which aid can be derived," it is "left with an ambiguous statute." *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (quoting *United States v. Fisher,* 6 U.S. (2 Cranch) 358, 386, 2 L.Ed. 304 (1805)); *see also United States v. Shabani,* —— U.S. ——, ——, 115 S.Ct. 382, 386, 130 L.Ed.2d 225 (1994) ("The rule of lenity, however, applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute.").

Such ambiguity does not exist here. The statute and sentencing guidelines clearly instruct the court to impose a minimum ten year sentence if the weight of any LSD and its carrier medium exceed 10 grams. Neal has presented nothing to this court to undermine that conclusion, and that conclusion does not produce consequences "so absurd or glaringly unjust" as to make us reconsider whether the result comports with Congress's intent. *United States v. Rodgers,* 466 U.S. 475, 484, 104 S.Ct. 1942, 1948, 80 L.Ed.2d 492 (1984). As such, the rule of lenity does not apply.

### D.

Finally, we note that every other court to have considered this issue has arrived at the same conclusion we have. *See United States v. Pardue,* 36 F.3d 429 (5th Cir.1994); *Cox v. United States,* 35 F.3d 565 (6th Cir.1994) (table) (unpublished opinion, text at 1994 WL 443250, 1994 U.S.App. LEXIS 22188); *United States v. Dimeo,* 28 F.3d 240 (1st Cir.1994); *United States v. Mueller,* 27 F.3d 494 (10th

---

**5.** For the defendant in *Chapman,* the number of doses triggering the mandatory minimum five-year imprisonment would have been about 175. *See Chapman,* 500 U.S. at 455–56, 111 S.Ct. at 1922–23. A defendant responsible for between 125 doses and 250 doses of LSD is eligible for imprisonment of only one-half the specified guideline range, followed by supervised release with a condition of community confinement or home detention. U.S.S.G. § 5C1.1, comment. (n. 4).

Cir.1994); *United States v. Boot,* 25 F.3d 52 (1st Cir.1994); *United States v. Richardson,* 866 F.Supp. 1376 (S.D.Ala.1994); *United States v. Bugella,* 861 F.Supp. 77 (M.D.Fla. 1994); *United States v. Pirnat,* 859 F.Supp. 995 (E.D.Va.1994); *United States v. Kinder,* 853 F.Supp. 122 (D.Ver.1994); *see also United States v. Smith,* 39 F.3d 1143, 1146 n. 2 (11th Cir.1994) (noting but declining to address issue); *United States v. Staufer,* 38 F.3d 1103, 1108 n. 2 (9th Cir.1994) (same). A panel of the Eighth Circuit did issue an opinion contrary to this line of cases, *United States v. Stoneking,* 34 F.3d 651 (8th ·Cir. 1994), but that opinion was vacated pending rehearing *en banc.* 1994 WL 601482 (8th Cir. September 16, 1994). We see no occasion here to depart from the reasoned opinions of these courts and thereby create a circuit split.

### III.

Congress has declined to follow a single approach to federal sentencing policy. In most cases, a defendant's sentence will be determined under the generally applicable Guidelines scheme which increases a defendant's sentence in rough proportion to the severity of the crime. For a few select classes of criminals (most notably, repeat offenders and large-scale drug dealers), however, Congress has enacted more stringent mandatory minimum sentences that abruptly depart from the Guidelines regime. By enhancing the punishment for distributing larger amounts of drugs (and by including the carrier medium in the computation of the quantity of drugs attributed to the defendant), Congress acted within its province. The Guidelines amendment creating a presumptive weight for purposes of calculating a defendant's base offense level, in effect, cuts small scale dealers a break by making them eligible for shorter sentences, and even probation. However, as the Commentary made clear, the amendment did not (and, in our view, could not) trump the statutory mandatory minimum provisions. Under *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993), the Commission may reconcile conflicting judicial interpretations of the Guidelines by clarifying the Guidelines, as it did through Amendment

488. However, nothing in *Stinson* suggests that a Guidelines amendment can resolve a conflict between the Guidelines and a statute with respect to the meaning of a statutory term. The Supreme Court has authoritatively construed the term at issue in this case, and, in the absence of either Congressional amendment or clarification of the statute or à reinterpretation of the relevant language by our judicial superiors, we, like the Commission, are bound by *Chapman* for the purpose of applying the mandatory minimum scheme. The district court properly applied the Sentencing Guidelines.

AFFIRMED.

· RIPPLE, Circuit Judge, with whom CUMMINGS and ROVNER, Circuit Judges, join, dissenting.

This case presents a straightforward task that ought to be easily accomplished—the sentencing of a person who has been convicted of distributing LSD. Several provisions of law must be considered. However, the harmonization of those provisions is quite a bit less complicated than the circuitous approach taken by the majority. The judiciary has an obligation to presume that those who sit in the Congress intend that the country be governed by a sentencing system that, although composed of both mandatory minimum sentences and the guideline ranges, operates as an integrated and fair system of criminal justice.

The sections that follow first set forth the approach to sentencing LSD offenders now sanctioned by the Congress and explain why that approach is supported by well-established principles. Finally, the legal and practical infirmities inherent in the approach now adopted by the majority are addressed.

### A.

In determining the appropriate sentencing methodology, we must begin with the statute. Section 841(a) of Title 21 proscribes the distribution of certain substances, including LSD. Section 841(b)(1)(B)(v) establishes a mandatory minimum sentence for a conviction of distribution of certain amounts of a

"mixture or substance" containing "a detectable amount" of LSD.

Pursuant to its statutory authority to set sentencing ranges for the distribution of contraband substances, including LSD, the United States Sentencing Commission has set a range of terms of imprisonment for violations of the statute. These terms of imprisonment are correlated to the weight of the controlled substance. Therefore, U.S.S.G. § 2D1.1(c), the Drug Quantity Table of the Guidelines, establishes sentencing ranges for narcotics violations of § 841; the length of a sentence increases proportionally with the increased quantity of the drug in question. In the case of LSD in a carrier medium, the Sentencing Commission, through a recent revision ("Amendment 488"), has set the range of sentences so that each dose of LSD has a presumptive weight of 0.4 mg. In the "Background" Commentary to § 2D1.1 that accompanies this recent revision, the Commissioners noted that the weights of carrier media differ widely. In order to avoid the injustice of disparate sentences caused solely by the varying weight of different carrier media used by different defendants, the Commission selected a fixed weight to ensure against unwarranted disparity in sentences. The Commission also noted that assigning a fixed weight to the medium was necessary to ensure that those convicted of distributing LSD were not treated unfairly in comparison to defendants convicted of distributing other contraband substances even more dangerous than LSD.

In selecting 0.4 mg, the Commissioners noted that this weight exceeded the standard dosage unit of 0.05 mg for pure LSD as calculated by the Drug Enforcement Administration. It justified that higher weight on the ground that justice required that the carrier medium be calculated evenhandedly into the sentencing determination. The Commission gave two reasons for this inclusion of the carrier medium: (1) The weight of most controlled substances in the Drug Quantity Table includes the amount of a carrier medium; (2) In *Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), the Supreme Court interpreted the statutory section imposing a mandatory minimum sentence for the distribution of a single gram or more of a mixture or substance containing LSD to require the inclusion of the carrier medium within the weight calculation. Therefore, in promulgating this method of calculating the weight of LSD in Amendment 488 after the Supreme Court's decision in *Chapman*, the Commission expressly addressed the need to comply with the Supreme Court's interpretation of the statute in *Chapman*. Congress, having been explicitly advised of this change and of the Commission's interpretation of the Supreme Court's reading of the statute, took no action to countermand the Commission's promulgation. Therefore, the Sentencing Guideline's § 2D1.1(c), as revised by Amendment 488, is consistent with 21 U.S.C. § 841(b). It fully takes into account the Supreme Court's interpretation of § 841(b) in *Chapman* with respect to the mandatory minimum sentence provision. Accordingly, it should govern the weight calculations of controlled substances for sentencing determinations.[1]

1. The following Circuits have addressed the issue in holding or dictum:
**First Circuit:** *United States v. Dimeo*, 28 F.3d 240, 241 (1st Cir.1994) (noting that a reduction in the mandatory minimum sentence would be inconsistent with the Commission's statement that Amendment 488 did not override "the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence"); *United States v. Boot*, 25 F.3d 52, 55 (1st Cir. 1994) (stating that "Congress simply acquiesced in the restrictive reach of Amendment 488 duly noted by the Commission").
**Fifth Circuit:** *United States v. Pardue*, 36 F.3d 429, 431 (5th Cir.1994) (per curiam) (focusing on the "does not override" language in the Background Commentary to § 2D1.1(c) and finding that this language "leads to the inescapable conclusion that the mandatory minimum of § 841, calculated according to *Chapman*, overrides the retroactive application of the new guideline").
**Sixth Circuit:** *Cox v. United States*, No. 94–3041, 1994 WL 443250, at **2, 1994 U.S.App. Lexis 22188, at *4 (6th Cir.1994) (unpub. order) (finding that district court's refusal to order sentence below mandatory minimum "finds support in the plain language" of guideline § 5G1.1(b) and the Background Commentary to § 2D1.1).
**Seventh Circuit:** *United States v. Sassi*, No. 94–1363, 1994 WL 450134, 1994 U.S.App. Lexis 22932 (7th Cir.1994) (unpub. order) (citing *Boot* and "does not override" language of the Background Commentary and noting that Commis-

### B.

In stark contrast to the Commission's attempt, with the approval of the Congress, to maintain fairness in sentencing, the majority adopts an alternate approach, the so-called "dual weight" system of calculating LSD weight. Under that approach, a sentencing court first must use the actual weight of the controlled substance combined with its medium to determine whether the offender requires the mandatory minimum sentence. If the offender does not fall off the "cliff" and incur the mandatory minimum sentence, the court must then recalculate the sentence on the basis of the presumptive weight.

The majority suggests that this approach is consistent with the revised Guidelines. To support this assertion, it depends, without any heed to context, on an interpretation of two sentences of the revised guideline commentary. It first notes, adding its own emphasis, that the Commission wrote that the presumptive weight was established "*for purposes of determining the base offense level.*" Opinion at 1408 (emphasis supplied). It then quotes, again adding its own emphasis: " [T]his approach *does not override* the applicability of "mixture or substance" for the purpose of applying any mandatory minimum sentence.' " *Id.* (emphasis supplied). Reading these two sentences in isolation and with the assistance of its own emphasis, the majority concludes that the Sentencing Commission intended, and the Congress agreed, that the determination of whether the mandatory minimum sentence was required would be made without reference to the weight established by the revised guideline.[2] However, these isolated selections make a great deal more sense when they are read in the context of the entire explanation given in the paragraphs above those sentences.[3] Read in

---

sion had not overridden *Chapman* ), *cert. denied,* —— U.S. ——, 115 S.Ct. 1121, 130 L.Ed.2d 1084 (1995).

**Eighth Circuit:** *United States v. Stoneking,* 34 F.3d 651 (8th Cir.1994) (rejecting dual weight analysis in favor of uniform application of presumptive weight), *vacated,* 1994 WL 601482, 1994 U.S.App. Lexis 30466 (8th Cir. Sept. 16, 1994) (ordering rehearing en banc and scheduling argument for December 6, 1994).

**Tenth Circuit:** *United States v. Mueller,* 27 F.3d 494, 496–97 (10th Cir.1994) (concluding, in a case in which the defendant had received a reduction below the applicable mandatory minimum sentence pursuant to Fed.R.Crim.P. 35, that the defendant was not entitled to any further reductions because he was subject to a mandatory minimum at the time he was sentenced, but failing to analyze whether Amendment 488 could be read in harmony with the Supreme Court's decision in *Chapman* ).

Two Circuits have reserved ruling on the question:

**Ninth Circuit:** *United States v. Staufer,* 38 F.3d 1103, 1108 n. 2 (9th Cir.1994) ("We express no view as to the effect of the Amendment [488] on the calculation of the mandatory minimums in light of the Supreme Court's decision in *Chapman v. United States*[.]").

**Eleventh Circuit:** *United States v. Smith,* 39 F.3d 1143, 1146 n. 2 (11th Cir.1994) ("We express no opinion as to whether the drug quantity determination at sentencing is to be governed by the recent amendment to the sentencing guidelines ... or by the rule set down by the Supreme Court in *Chapman.*").

**2.** The opinion of the First Circuit in *Boot* focuses on the second of these sentences and claims that it alone is relevant: "Without more—and there is no more[.]" *Boot,* 25 F.3d at 55. But, as the

following footnote demonstrates, there is a great deal more.

**3.** Amendment 488 provided, in pertinent part, that:

The Commentary to § 2D1.1 captioned "Application Notes" is amended by inserting the following additional note:

"18. LSD on a blotter paper carrier medium typically is marked so that the number of doses ('hits') per sheet readily can be determined. When this is not the case, it is to be presumed that each ¼ inch by ¼ inch section of the blotter paper is equal to one dose. In the case of liquid LSD (LSD that has not been placed onto a carrier medium), using the weight of the LSD alone to calculate the offense level may not adequately reflect the seriousness of the offense. In such a case, an upward departure may be warranted.".

The Commentary to § 2D1.1 captioned "Background" is amended by inserting the following paragraphs at the end:

"Because the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself, the Commission has determined that basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD (but different carrier weights), as well as sentences disproportionate to those for other, more dangerous controlled substances, such as PCP. Consequently, in cases involving LSD contained in a carrier medium, the Commission has established a weight per dose of 0.4 milligram for purposes of determining the base offense level.

context, these sentences summarize the goals accomplished by the Commission in the amendment: (1) It harmonized offense levels for different controlled substances; (2) It lessened the "undue influence" that different carrier weights would have on the offense level; and (3) It took into account *Chapman*'s interpretation of the terms "mixture or substance" when applying a mandatory minimum sentence.

Any lingering doubt as to the appropriate reading of the guideline commentary ought to be dispelled by an examination of the practical effect of the majority's interpretation. Under the "dual weight" method of calculation, an LSD trafficker would receive

The dosage weight of LSD selected exceeds the Drug Enforcement Administration's standard dosage unit for LSD of 0.05 milligram (*i.e.*, the quantity of actual LSD per dose) in order to assign some weight to the carrier medium. Because LSD typically is marketed and consumed orally on a carrier medium, the inclusion of some weight attributable to the carrier medium recognizes (A) that offense levels for most other controlled substances are based upon the weight of the mixture containing the controlled substance without regard to purity, and (B) the decision in *Chapman v. United States*, [500 U.S. 453,] 111 S.Ct. 1919, [114 L.Ed.2d 524] (1991) (holding that the term 'mixture or substance' in 21 U.S.C. § 841(b)(1) includes the carrier medium in which LSD is absorbed). At the same time, the weight per dose selected is less than the weight per dose that would equate the offense level for LSD on a carrier medium with that for the same number of doses of PCP, a controlled substance that comparative assessments indicate is more likely to induce violent acts and ancillary crime than is LSD. (Treating LSD on a carrier medium as weighing 0.5 milligram per dose would produce offense levels equivalent to those for PCP.) Thus, the approach decided upon by the Commission will harmonize offense levels for LSD offenses with those for other controlled substances and avoid an undue influence of varied carrier weight on the applicable offense level. Nonetheless, this approach does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence (*see Chapman;* § 5G1.1(b))." .
The Commission has found that the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself (*e.g.*, LSD is typically placed on blotter paper which generally weighs from 5 to 10 milligrams per dose; the weight of the LSD itself per dose is generally from 0.02 to 0.08 milligram; the Drug Enforcement Administration describes a standard dose of LSD as containing 0.05 milligram of LSD). As a result, basing the offense level on the entire weight of the LSD and carrier medium produces unwarranted disparity among offenses involving the same quantity of actual LSD but different carrier weights, as well as sentences that are disproportionate to those for other, more dangerous controlled substances, such as PCP, heroin, and cocaine. Under the guidelines prior to the amendment, for example, 100 grams of heroin or 500 grams of cocaine (weights that correspond to several thousand doses, the number depending upon the purity) result in the same offense level as 125 doses of LSD on blotter paper (which has an average weight of 8 milligrams per dose) or 1 dose of LSD on a sugar cube (2000 milligrams per dose). Consequently, in cases involving LSD contained in a carrier medium, this amendment establishes a weight per dose of 0.4 milligram to be used for purposes of determining the base offense level. The dosage weight of LSD selected by the Commission exceeds the Drug Enforcement Administration's standard dosage unit for LSD of 0.05 milligram (*i.e.*, the quantity of actual LSD per dose) in order to assign some weight to the carrier medium. Because LSD typically is marketed and consumed orally on a carrier medium, the inclusion of some weight attributable to the carrier medium recognizes (A) that offense levels for most other controlled substances are based upon the weight of the mixture containing the controlled substance without regard to purity, and (B) the decision in *Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (holding that the term "mixture or substance" in 21 U.S.C. § 841(b)(1) includes the carrier medium in which LSD is absorbed). At the same time, the weight per dose selected is less than the weight per dose that would equate the offense level for LSD on a carrier medium with that for the same number of doses of PCP, a controlled substance that comparative assessments indicate is more likely to induce violent acts and ancillary crime than is LSD. Treating LSD on a carrier medium as weighing 0.5 milligram per dose would produce offense levels equivalent to those for PCP (for example, 2000 doses of LSD at 0.5 milligram per dose equals 1 gram of LSD—corresponding to the lower limit of offense level 26; similarly, 2000 doses of PCP at 5 milligrams per dose, the standard amount of actual PCP in a dose, equals 10 grams of actual PCP—corresponding to the lower limit of offense level 26). Thus, the approach decided upon by the Commission will harmonize offense levels for LSD offenses with those for other controlled substances and avoid an undue influence of varied carrier weight on the applicable offense level. Nonetheless, this approach does not override the definition of mixture or substance for purposes of applying any mandatory minimum sentence (*see Chapman;* § 5G1.1(b)). **The effective date of this amendment is November 1, 1993.**

the mandatory minimum sentence of five years for one gram or more of LSD by selling LSD in approximately one-half of a sugar cube or 125 blotter paper squares. *See* U.S.S.G. amend. 488 (noting that average weights of sugar cube and blotter square are 2000 mg and 8 mg, respectively); *cf. Chapman,* 500 U.S. at 458 n. 2, 111 S.Ct. at 1924 n. 2 (reproducing chart in which weights of various carrier media are listed; using these weights, a dealer could qualify for the five-year mandatory minimum by selling LSD in approximately one-half of a sugar cube, 72 blotter paper squares, or 445 gelatin capsules). By contrast, under the Sentencing Commission's method, whether an LSD trafficker receives the five-year mandatory minimum sentence will not depend on the type of medium he happens to use but on the number of doses he sells.

We ought not attribute to the Commission or to the Congress the injustice produced by the majority's interpretation. Until today, we have acknowledged that, although Congress has chosen to address sentencing policy issues through both statutes and sentencing guidelines, courts ought not presume lightly that it intended these two vehicles of the legislative will to work at odds with each other. Indeed, with respect to mandatory minimum sentences, we have explicitly noted that Congress did not intend to employ through the mandatory minimum sentence a scheme "so completely at odds with the measured approach required by the Guidelines." *United States v. Young,* 997 F.2d 1204, 1210 (7th Cir.1993); *see also United States v. Martinez,* 987 F.2d 920, 926 (2d Cir.1993) (same); *cf. United States v. Edwards,* 945 F.2d 1387, 1396 (7th Cir.1991) (explaining that "the limiting principle [of conspiracy liability] underlying conspiracy law and the Guidelines is essentially one and the same"), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992). Here, the Sentencing Commission established a methodology for attributing a weight to the dose of LSD that took into account, as the statute setting the mandatory minimum requires, the weight of the carrier medium. It therefore harmonized its setting of graduated, weight-based

sentences with the command of the mandatory statute. Congress has had the opportunity to scrutinize and approve the Commission's work.[4] After the amended § 2D1.1 was sent to Congress for review, it took effect without modification or delay, and hence with congressional approval, in November 1993. We ought not presume that the Congress was derelict in its duty to scrutinize the workproduct of the Commission. We certainly ought not assume that Congress has made conflicting policy decisions, especially when those decisions can be so easily reconciled.

Nor is it appropriate to lay the blame for the result reached today on the doorstep of the Supreme Court. *Chapman* does not require the result reached by the majority. In *Chapman,* the Supreme Court was asked to decide whether eligibility for the mandatory minimum sentence under 21 U.S.C. § 841(b) was to be determined by the weight of the pure LSD or of the carrier medium containing the LSD. It held that the mandatory minimum statute "requires the weight of the carrier medium to be included when determining the appropriate sentence for trafficking in LSD." 500 U.S. at 468, 111 S.Ct. at 1929. The Supreme Court was presented with only two choices in *Chapman:* to count either the infinitesimal weight of the pure LSD contained in a dose or the entire weight of the dose and the blotter paper. Faced with that choice, and in keeping with the market-oriented approach adopted by the Guidelines, the Court could only choose the weight of the pure drug and its carrier. Two years later, the Sentencing Commission, acknowledging *Chapman,* amended § 2D1.1. It assigned a standard dosage weight of 0.05 mg to a unit of pure LSD and a weight of 0.35 mg to the carrier medium in order to "harmonize offense levels" for different controlled substances and to balance the influence that different carrier weights would have on the applicable offense level for an LSD offense. This approach, explained the Commission, is faithful to the holding of *Chapman.* U.S.S.G. § 2D1.1, comment. (backg'd.). Amendment 488 simply assigns a rational and uniform weight to that portion of

4. *See* 28 U.S.C. § 994(p).

the carrier that can be said to be bonded or mixed with the drug. The amendment therefore satisfies *Chapman*'s interpretation of the mandatory minimum statute that the weight assigned to the LSD include the weight of the carrier medium. It retains the "market-oriented" approach, under which the total quantity of drugs distributed, rather than the amount of pure drug sold, is used to determine the length of the sentence. By assigning a weight per dose that is eight times the actual weight of the pure drug, the Sentencing Commission has determined, in effect, that 0.05 mg of LSD can be absorbed in a carrier eight times its weight. Thus, Amendment 488 remains true to the *Chapman* mandate that the weight of the carrier must be included if the carrier can be said to be bonded with or mixed with the drug. At the same time, it promotes the sentencing uniformity that has been at the heart of the Congress' effort to achieve sentencing reform. Years of incarceration and thousands of public dollars to support that incarceration ought not depend on whether the drug trafficker used blotter paper or sugar cubes as a medium.

The amendment was a refinement of the earlier practice of weighing on an ad hoc basis whatever carrier the defendant happened to use. Such a refinement of the sentencing scheme through the action of the Commission, with the knowledge and the consent of the Congress, is an expected and necessary part of the process contemplated by the present sentencing scheme. As the Supreme Court recently noted:

> Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest.

*Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (quoting *Braxton v. United States,* 500 U.S. 344, 348, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991)). The Sentencing Commission has interpreted properly the Supreme Court's requirement that the carrier weight be included. By stating that its "approach does not override the applicability of

'mixture or substance' for the purpose of applying any mandatory minimum sentence," the Commission has recognized the continued viability of the mandatory minimum sentence whenever the weight of the LSD is calculated by the method stated in § 2D1.1. Congress did not challenge that revision. It is now this court's responsibility to read the statutory sentencing provisions and the Guidelines as a consistent whole that expresses the intent of the Congress. *See United States v. Young,* 34 F.3d 500, 506 (7th Cir.1994). The sentence ought to be vacated and the case remanded for resentencing.