**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Stanley J. MARSHALL, Defendant–Appellant.**

No. 95–2006.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1995.

Decided May 8, 1996.

Byron G. Cudmore, Roger Heaton (argued), Office of U.S. Atty., Springfield, IL, for U.S.

Donald T. Bergerson, San Francisco, CA, for Stanley J. Marshall.

Before KANNE and DIANE P. WOOD, Circuit Judges, and SKINNER, District Judge.*

KANNE, Circuit Judge.

■ Stanley Marshall filed a motion to modify his sentence in light of an amendment to the United States Sentencing Guidelines, which revised the method for calculating the weight of lysergic acid diethylamide ("LSD") [1] for guideline sentencing purposes. We are asked in this appeal to decide whether a district court, in modifying a sentence

---

* Hon. Walter Jay Skinner, U.S. District Judge for the District of Massachusetts, sitting by designation.

1. LSD is a hallucinogen classified as a schedule I controlled substance under 21 U.S.C. § 812. Pure LSD is quite potent (the normal dose is 0.05 milligram), and retail distribution is usually effected by dissolving pure LSD in a solvent and applying the solution to a carrier medium such as blotter paper. The solvent evaporates, and one then divides the carrier into dosage units, each containing a tiny amount of pure LSD. The weight of the carrier overwhelmingly accounts for the final weight of each dosage unit. For example, the 11,751 dosage units of LSD-impregnated blotter paper involved in Marshall's case weighed 113.32 grams. Only 670.72 milligrams of this total weight constituted pure LSD. *United States v. Marshall*, 706 F.Supp. 650, 651 (N.D.Ill. 1989), aff'd, 908 F.2d 1312 (7th Cir.1990), *aff'd, Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

pursuant to 18 U.S.C. § 3582(c)(2), is authorized to consider the defendant's eligibility under the "safety valve" provision located at 18 U.S.C. § 3553(f) if the original sentencing preceded the effective date of the safety valve statute. We find that the circumstances of this case preclude us from deciding that issue because of Marshall's ineligibility under § 3553(f). We accordingly affirm the judgment of the district court for reasons different from those set forth in the district court's opinion. *See Indemnified Capital Inv. v. R.J. O'Brien & Assoc.,* 12 F.3d 1406, 1410 (7th Cir.1993); *Reinstine v. Rosenfield,* 111 F.2d 892, 894 (7th Cir.1940).

## I

The district court convicted Marshall of conspiring to distribute and distributing more than ten grams of LSD in violation of 21 U.S.C. §§ 841(a)(1), 846 on February 10, 1989. The district court entered a judgment of conviction on July 5, 1989, and sentenced Marshall to twenty years imprisonment and five years supervised release. That sentence was based upon the combined weight of the LSD and the carrier—113.32 grams. We affirmed the judgment of the district court, *United States v. Marshall,* 908 F.2d 1312 (7th Cir.1990), and the Supreme Court affirmed our decision in *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

On November 3, 1994, Marshall filed a motion for sentence modification in which he sought a reduction of his sentence based upon amendment 488 to the guidelines. That amendment added the following language to § 2D1.1:

> Because the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself, the Commission has determined that basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD (but different carrier weights), as well as sentences disproportionate to those for other, more dangerous controlled substances, such as PCP. Consequently, in cases involving LSD contained in a carrier medium, the Commission has established a weight per dose of 0.4 milligram for purposes of determining the base offense level.

U.S.S.G. § 2D1.1, comment (backg'd) (1993). This amendment took effect November 1, 1993, and operates retroactively according to U.S.S.G. § 1B1.10(c).

Amendment 488 was designed to harmonize the calculations of LSD offense levels under the guidelines with those for other controlled substances by eliminating the variable of carrier weight. It also reflected a premise of the Supreme Court's holding in *Chapman* that the term "mixture or substance" in 21 U.S.C. § 841(b)(1) includes the carrier medium in which LSD is absorbed, 500 U.S. at 461–62, 111 S.Ct. at 1925, namely, that controlled substances are typically immersed in carrier media for distribution and weighed as such for sentencing calculations.

The coexistence of amendment 488 and the Court's construction of 21 U.S.C. § 841(b)(1) in *Chapman* implied diverging systems of calculating LSD weight for guideline and statutory sentencing purposes. Amendment 488 seemed explicitly to endorse such a dual system by stating that the 0.4 milligram calculation "does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence (*see Chapman;* § 5G1.1(b))." U.S.S.G. § 2D1.1, comment (backg'd). We relied in part on this language in our recent holding that the 0.4 milligram presumption does not override the *Chapman*-approved method of calculating LSD weight under 21 U.S.C. § 841(b). *United States v. Neal,* 46 F.3d 1405, 1408–10 (7th Cir.1995) (en banc). Following oral argument in this case, the Supreme Court unanimously confirmed our understanding that a dual calculation system flows from the dictates of amendment 488 and the Court's holding in *Chapman. Neal v. United States,* —— U.S. ——, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996).

Marshall argued in the district court that amendment 488 entitled him to a reduction in his sentence, and the government agreed. He made two additional arguments, both of which he raises on appeal. He claimed that

our decision in *Neal* was wrong and that the 0.4 milligram-per-dose weight calculation of the guidelines should also apply to the calculation under § 841(b)(1). In addition, he argued that the district court should examine his eligibility for the "safety valve" provisions of 18 U.S.C. § 3553(f) as contemplated by amendment 509 to the guidelines, which is codified at U.S.S.G. § 5C1.2 (1994) (restating the qualifications listed at § 3553(f)).

The district court ordered an updated presentence report, which calculated Marshall's base offense level at twenty-eight and assigned a two-point increase for his organizational role in the offense pursuant to U.S.S.G. § 3B1.1(c), resulting in an adjusted offense level of thirty. This report distressed Marshall because, as noted above, he sought the benefit of U.S.S.G. § 5C1.2. That section directs that if a conflict arises between the guideline sentence and the statutory mandatory minimum sentence, the guidelines shall control if the defendant meets the five criteria iterated at 18 U.S.C. § 3553(f).

Marshall's case presented a conflict between the guideline range and the statutory minimum sentence, the exact type of conflict that obtains from the dual calculation system we approved in *Neal*, 46 F.3d at 1408–10. An offense level of thirty equates to an incarceration range of 97121 months with a criminal history category I under the guidelines. *See* U.S.S.G. § 5A (1994). But under 21 U.S.C. § 841(b)(1)(A)(v), the total weight of the LSD and the carrier in Marshall's case requires a mandatory minimum sentence of ten years (120 months). *Neal*, —— U.S. ——, 116 S.Ct. at 769; *Chapman*, 500 U.S. at 461–62, 111 S.Ct. at 1925.

The revised presentence report recommended that Marshall receive the statutory minimum sentence. One of the five criteria in § 3553(f) is that the defendant not have been found to be "an organizer, leader, manager, or supervisor ... as determined under the sentencing guidelines." This report, like the one issued in 1989, asserted that Marshall was an organizer of the LSD distribu-

tion conspiracy and recommended a two-level upward adjustment under the "organizer, leader, manager, or supervisor" provision of U.S.S.G. § 3B1.1(c).[2] Marshall then filed a motion asking the district court to compel the preparation of a new presentence report that incorporated an assessment of his eligibility under § 3553(f).

The district court entered an order on April 12, 1995, in which it reduced Marshall's incarceration to 120 months pursuant to the mandatory minimum prescribed at 21 U.S.C. § 841(b)(1)(A)(v). The district court squarely followed our holding in *Neal*, 46 F.3d at 1408–10, and ruled that the combined weight of the carrier medium and the absorbed LSD was to be used in calculations under § 841(b)(1). It also found that Marshall was not eligible for consideration under § 3553(f) on the ground that provision applies only to sentences imposed after September 23, 1994, and his original sentence was imposed on July 5, 1989.

The district court reasoned that a sentence reduction under 18 U.S.C. § 3582(c) does not equate to a new sentence for the purpose of invoking § 3553(f). The district court also relied on the text of U.S.S.G. § 1B1.10, which lists those amendments that are to operate retroactively in support of sentence reductions under § 3582(c). Unlike amendment 488, amendment 509, which took effect September 23, 1994, does not have retroactive effect according to § 1B1.10(c). The district court also noted its previous finding in 1989 that Marshall was an organizer under U.S.S.G. § 3B1.1(c).

## II

Marshall raises two arguments on appeal. He urges us to revisit our decision in *Neal* that the weight of the LSD-infused carrier medium should be used to calculate the statutory minimum sentence under 18 U.S.C. § 841(b)(1). He also argues that the district court erred in refusing to consider his eligibility under 18 U.S.C. § 3553(f) for the guideline sentence range and in refusing

**2.** The district court in 1989 agreed with this recommendation based upon its finding that Marshall had saturated blotter paper with LSD solution and organized its wholesale distribution.

We affirmed the district court's decision consequently to increase Marshall's offense level by two points. *Marshall*, 908 F.2d at 1326.

to order that the revised presentence report undertake similar consideration. Marshall's first argument is easily dispatched for two simple reasons. First, we believe *Neal* remains a correct analysis of the applicable law. Second, the Supreme Court unanimously agrees. *Neal,* — U.S. ——, 116 S.Ct. 763, 133 L.Ed.2d 709.

■ Marshall's second argument implicates the district court's ruling that it lacked authority "to go below the mandatory minimum" prescribed by § 841(b)(1). This judgment rested upon the district court's legal interpretations of U.S.S.G. §§ 1B1.10, 5C1.2 and of the interaction of those provisions with 18 U.S.C. § 3582(c).[3] Although we normally review legal interpretations *de novo, United States v. Meza,* 76 F.3d 117, 121 (7th Cir.1996), the facts of this case militate against plenary review of the district court's conclusions of law. "Appellate judges do not possess roving discretion to deliver opinions on issues that lurk in the background of cases." *United States v. Seacott,* 15 F.3d 1380, 1390 (7th Cir.1994) (Easterbrook, J., concurring). As we discuss below, reaching the legal question raised by Marshall would amount to an advisory detour into the abstract because he is foreclosed from reaping the benefit of the provision that he claims is implicated by his sentence modification. The record supports an affirmance of the district court's decision, but for reasons different from those relied on by the district court. *See Indemnified Capital Inv.,* 12 F.3d at 1410; *Reinstine,* 111 F.2d at 894.

The premise of Marshall's second argument is that the district court's reduction of his sentence under § 3582(c) amounted to a new sentencing, thus invoking the safety valve provision of § 3553(f). Interestingly, Marshall does not address how he might have qualified under § 3553(f) when the district court accepted the revised presentence report which accorded him a two-level increase for his role as a leader or organizer—

a finding that would disqualify him for the guideline range pursuant to § 3553(f). Nor does he mount a cogent attack upon that element of the presentence report. Instead, he is concerned that the district court did not order the probation officer to reevaluate the recommendation for a two-level upward adjustment.

We need not address the question whether a sentence reduction under § 3582(c) triggers the potential applicability of § 3553(f) because Marshall could not avail himself of the safety valve provision in light of the district court's previous finding that he was an organizer under U.S.S.G. § 3B1.1(c)—a finding that we affirmed. *Marshall,* 908 F.2d at 1326. Marshall offers two reasons why this determination is flawed, and we will review the district court's findings of facts in this regard for clear error. *United States v. Ritsema,* 31 F.3d 559, 564 (7th Cir.1994).

Marshall's first point is that the Supreme Court's decision in *Chapman* implicitly undermined the finding that he was an organizer based upon his spraying of LSD solution on blotter paper. The *Chapman* Court stated that LSD's potency in its pure form requires that it be distributed on some type of carrier medium, 500 U.S. at 457, 111 S.Ct. at 1923, and Marshall infers from that observation a rule that applying LSD solution to a carrier can not qualify one as a manager or supervisor. Marshall illustrates his point by analogizing his role to that of a house painter. He suggests that his codefendant was acting as a supervisor by watching Marshall spray the blotter paper with LSD solution just as the owner of a home would supervise someone painting his house. One would be hard pressed to imagine a more creative or less persuasive analogy. There is no inconsistency between the Supreme Court's decision in *Chapman* and our previous conclusion that Marshall's actions qualified him as an organizer under U.S.S.G. § 3B1.1(c). *Marshall,* 908 F.2d at 1326.

---

**3.** No court has, to our knowledge, addressed the interaction of U.S.S.G. § 1B1.10 and 18 U.S.C. § 3582(c)(2) in the context presented in this appeal. *But see United States v. Polanco,* 53 F.3d 893, 898 (8th Cir.1995) (stating that § 3553(f) does apply to a resentencing on remand from a direct appeal where the vacated sentence was

ordered prior to September 23, 1994). We note, however, that the texts of both provisions explicitly state that a decision whether to reduce a sentence pursuant to a retroactive amendment is discretionary. *See United States v. Shaw,* 30 F.3d 26, 28 (5th Cir.1994) (per curiam) (collecting cases).

Marshall also claims that several of our decisions since 1989 endorse the principle that "a mid-level trafficker must do something more than fine-tune the mode of packaging the drug" to qualify as an organizer or manager under U.S.S.G. § 3B1.1(c). Two faulty premises doom this argument. First, Marshall is no "mid-level trafficker." We view Marshall's 11,751 doses of LSD the same way Congress did, that is, large enough to warrant a mandatory minimum sentence of ten years. *See* 21 U.S.C. § 841(b)(1)(A)(v). Second, Marshall's conduct was not a "fine tuning" of LSD packaging; it was the packaging. He applied the LSD solution to blotter paper, and this was a necessary step in preparing the LSD for distribution. *See Chapman,* 500 U.S. at 457, 111 S.Ct. at 1923.

The district court's finding that Marshall was an organizer under U.S.S.G. § 3B1.1(c) was not erroneous in 1989, nor would it have been erroneous in 1995. Even if § 3553(f) did apply to Marshall's sentence modification, his status as an organizer would foreclose him from receiving the benefit of that section. We therefore leave for another day the question whether and under what circumstances a modification under § 3582(c)(2) of a sentence originally imposed prior to September 23, 1994, might trigger the provisions of § 3553(f).

The final judgment of the district court against Stanley J. Marshall is

AFFIRMED.