In the

# United States Court of Appeals

## For the Seventh Circuit

No. 04-2850

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARRYL BRYANT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 04-013-CR-01 B/F—**Sarah Evans Barker**, *Judge.*

ARGUED FEBRUARY 22, 2005—DECIDED AUGUST 22, 2005

Before KANNE, WOOD, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* A grand jury charged Darryl Bryant, a convicted felon, with unlawful possession of firearms in violation of 18 U.S.C. § 922(g)(1). Bryant entered a plea agreement, which was filed with the district court on March 24, 2004. Under the terms of the plea agreement, Bryant accepted full responsibility. He also admitted that he possessed three firearms and that he had previously been convicted of a felony. Bryant agreed that his base offense level was at least 20, because his prior conviction was for a crime of violence. U.S.S.G. § 2K2.1(a)(4)(A). The plea agreement, however, left two contested factual issues related to the offense conduct: whether one of the firearms Bryant possessed was a

semiautomatic assault weapon as defined in 18 U.S.C. § 921(a)(30),[1] and whether Bryant possessed the firearms in connection with another felony offense—namely, drug dealing.

After the parties filed the plea agreement with the district court, *Blakely v. Washington*, 124 S. Ct. 2531 (2004), and this court's decision in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), were handed down in quick succession. In their sentencing memoranda, the government and Bryant presented their respective views on the effect that these cases might have on Bryant's sentence. Bryant restated his intention to plead guilty, waive a trial by jury, and have the judge resolve the disputed factual issues. Bryant insisted, however, that pursuant to the Sixth Amendment principles set forth in *Blakely* and *Booker*, the judge must find those facts beyond a reasonable doubt.

At the sentencing hearing on July 15, 2004, the district judge presciently concluded that the federal sentencing guidelines would not pass constitutional muster in light of *Blakely* and *Booker*. Accordingly, she stated her intention to fashion a sentence pursuant to her discretion. The judge opined that she was not required to make findings of fact, let alone make those findings beyond a reasonable doubt, because she was not adhering to the guide-

---

[1] According to 18 U.S.C. § 921(a)(30), a semiautomatic assault weapon must have the ability to accept a detachable magazine, a pistol grip that protrudes conspicuously beneath the action of the weapon, and a flash suppressor or threaded barrel designed to accommodate a flash suppressor. Bryant concedes that the rifle at issue had the first two characteristics, but he disputes the third, as discussed in greater detail below. Although not relevant to the disposition of this case, we note that § 921(a)(30) was repealed after the Violent Crime Control and Law Enforcement Act of 1994, 108 Stat. 1796, expired on September 13, 2004 (following Bryant's conviction and sentencing).

lines. Nevertheless, she resolved to make the findings of fact because of the uncertainty regarding the fate of the guidelines and our directive in *Booker* that judges should impose alternative sentences until that uncertainty is settled.

The judge then addressed the two disputed factual issues identified in the plea agreement. The presentence investigation report ("PSR") recommended a base offense level of 22, pursuant to U.S.S.G. § 2K2.1(a)(3) because, in the view of the probation officer, Bryant's weapon was in fact a semiautomatic assault weapon because it sported a "flash suppressor" and thus fit the definition contained in § 921(a)(30). In addition, the PSR recommended a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5) because Bryant possessed his firearms in connection with drug dealing.

Bryant argued that the device was not a "flash suppressor," and thus the rifle was not a semiautomatic assault weapon as defined in § 921(a)(30), which requires that such a firearm have "a flash suppressor or threaded barrel designed to accommodate a flash suppressor." As evidence, Bryant presented to the judge a printed web page advertisement of a device labeled a "flash hider"; Bryant contended that the device on his rifle muzzle was the advertised "flash hider," not a "flash suppressor." The government, on the other hand, presented testimony from a special agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE"), who testified that the mounted device was a flash suppressor. The agent also testified that he sent pictures of the rifle to the BATFE's firearms technology branch, which opined that the pictured firearm was a semiautomatic assault weapon because it appeared to have all of the prohibited characteristics listed in § 921(a)(30).

The judge heard this evidence and evaluated the other available evidence, including information contained in

the PSR and the photographs of the rifle. The judge found that the device was in fact a flash suppressor or that the rifle had the capacity to accommodate such a device, and thus the rifle qualified as a semiautomatic assault weapon. She expressly made her finding "by a preponderance and by the standard of beyond a reasonable doubt." The judge agreed that a base offense level of 22 was therefore appropriate.

The judge also considered information in the PSR and other evidence indicating that Bryant had possessed firearms in connection with drug dealing. The PSR contained ample evidence that Bryant was in fact dealing drugs. The day before the confiscation of the firearms, Bryant sold cocaine to a government informant. Following the controlled buy, the government recovered 3.14 grams of crack cocaine, 9.85 grams of marijuana, electronic scales, plastic baggies, and various controlled substances in tablet form. Bryant was found to have $1,018 in his pocket, including a marked bill from the controlled buy. Finally, Bryant was shown to have had no verifiable employment since May 2000. Upon consideration of this evidence, the judge concluded beyond a reasonable doubt that Bryant did, in fact, possess the firearms in connection with drug dealing.

After making both findings of fact, the district judge reiterated, "I'm not legally bound by the guidelines, but I will take the guidelines into account as I fashion a sentence." The judge allowed Bryant to address the court, and noted the fact that Bryant accepted responsibility for his crimes. The judge also carefully weighed the various factors present in Bryant's case, including his personal background, his criminal background, his age, his education, and his family situation. She also considered the gravity of Bryant's offense and the likelihood that punishment would deter future criminal behavior by Bryant. In short, the judge carefully considered the various factors enumerated

in 18 U.S.C. § 3553.

Following her oral recitation of the factors present in Bryant's case, the judge in her discretion imposed a sentence of 84 months' imprisonment, three years of supervised release, and a $100 special assessment. The judge noted that the statutory maximum for violation of 18 U.S.C. § 922(g)(1) is 120 months' imprisonment. She also noted that, had she applied the guidelines, Bryant would have had a total offense level of 25 and criminal history category of IV, making the applicable sentencing range 84-105 months' imprisonment. The sentence Bryant actually received, therefore, would have been appropriate even if imposed pursuant to the guidelines.

On appeal, Bryant argues that the district judge erred when she attempted to anticipate the fate of the guidelines and, in doing so, she failed to sentence Bryant in accordance with the methodology that the Supreme Court eventually adopted in *Booker*. Bryant also holds fast to his view that the judge had to make her findings of fact beyond a reasonable doubt and that she failed in that respect, too. Because of these perceived errors, Bryant seeks a remand for resentencing.

Bryant is wrong on all counts. The district judge's approach nicely predicted the Supreme Court's reasoning in *United States v. Booker*, 125 S. Ct. 738 (2005). There was nothing wrong with the judge's attempt to anticipate the state of the federal guidelines and render a sentence accordingly, particularly in light of *Blakely* and this court's *Booker* opinion—both of which cast significant doubt on the continued viability of the federal sentencing scheme as it stood. The judge may not have gotten the "precise holding" correct, as Bryant argues, but she certainly got close enough that we can discern no error in Bryant's sentencing.

Because the judge presciently treated the guidelines as advisory, she could sentence Bryant up to the statutory maximum—ten years—before running afoul of the Sixth

Amendment, as set forth in *Booker*'s predecessor cases. *See, e.g., Blakely*, 124 S. Ct. at 2531; *Apprendi v. New Jersey*, 530 U.S. 466 (2000). By treating the guidelines as advisory, the judge necessarily sidestepped the constitutional infirmity identified in *Booker*—judicial factfinding coupled with mandatory application of the guidelines. *Booker*, 125 S. Ct. at 750, 764; *accord United States v. Antonakopoulos*, 399 F.3d 68, 75 (1st Cir. 2005) ("The [*Booker*] error is not that a judge . . . determined facts under the Guidelines which increased a sentence beyond that authorized by . . . an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system."). The judge sentenced Bryant to 84 months' imprisonment, well beneath the statutory maximum. There is no *Booker* error here, so Bryant's argument on that score fails.

The district judge committed no error with respect to her findings of fact, either. Bryant interprets *Booker* and its predecessor cases as requiring *all* factual determinations in sentencing to be proved beyond a reasonable doubt. We reiterate, however, that these cases do not foreclose judicial factfinding in the sentencing context, nor do they dictate that judges must find those facts beyond a reasonable doubt. *See United States v. Dean*, 414 F.3d 725, No. 04-3172, 2005 WL 1592960, at *4-5 (7th Cir. July 7, 2005); *United States v. Della Rose*, 403 F.3d 891, 907 (7th Cir. 2005); *see also* U.S.S.G. § 6A1.3. *Booker* and its predecessors make clear that a Sixth Amendment problem emerges if judicial factfinding results in a sentence exceeding the statutory maximum, for example, or if such factfinding requires a particular sentence in the context of a mandatory sentencing guidelines scheme. *See Dean*, 2005 WL 1592960, at *5 ("With the guidelines now merely advisory, factfindings that determine the guidelines sentence do not determine the actual sentence, because the sentencing judge is not required to impose the guidelines sentence; and so the Sixth Amendment is not in play."); *United States v.*

*George*, 403 F.3d 470, 472 (7th Cir. 2005); *accord United States v. Trujillo-Terrazas*, 405 F.3d 814, 818 (10th Cir. 2005) ("By rendering the Guidelines discretionary, the [Supreme] Court saved the process of judicial factfinding from unconstitutionality under the Sixth Amendment.").

Such circumstances are not present here. The judge treated the guidelines as advisory, and Bryant's sentence was well below the statutory maximum sentence he could have received on the basis of facts he admitted in his plea agreement. We also note that the judge properly followed the procedure to calculate a guidelines sentence, thus indicating that she took the guidelines into account in fashioning a sentence. Although the judge indicated her belief that she did not have to conduct factfinding when treating the guidelines as advisory, she prudently did so anyway. *See* Fed. R. Crim. P. 32(i)(3)(B); U.S.S.G. § 6A1.3. This case, therefore, does not present a situation like that in *Dean*, where we remanded for resentencing because the district court failed to resolve factual disputes in the PSR—a requirement that survives even under an advisory guideline scheme. 2005 WL 1592960, at *4-5.

All that remains, then, of Bryant's challenge to the district court's sentencing procedure is his contention that the judge's factual findings were erroneous. We review these factual findings for clear error. *United States v. Corral*, 324 F.3d 866, 870 (7th Cir. 2003). Under this deferential standard of review, we will not overturn the factual findings of the district court unless we are left with the definite and firm conviction that a mistake has been made. *Id.*; *see also United States v. Stokes*, 211 F.3d 1039, 1044 (7th Cir. 2000) ("Where there are two permissive views of the evidence, the fact finder's choice between them cannot be clearly erroneous.").

Upon review of the record, we cannot say that the judge's finding that Bryant's rifle was a semiautomatic

assault weapon was clearly erroneous. As recounted above, the judge considered evidence from a variety of sources, including testimony from a BATFE agent, regarding the identity of the device in question. Much of the evidence pointed to the conclusion that the device was a "flash suppressor." The judge did not stop at the point of simply identifying the device as a flash suppressor. She also queried the BATFE agent regarding the purposes served by such a device, and the agent replied that its main function is to "suppress" muzzle flash, which makes the weapon more dangerous to law enforcement personnel. Although Bryant provided evidence that the device was a "flash hider," he also conceded that the device reduced muzzle flash to some degree (though he continued to insist—without citation—that a flash suppressor must completely eliminate muzzle flash).

After considering all of the evidence, the judge concluded that the apparent dispute was largely a matter of semantics, as regardless of how the device in question is labeled, the evidence indicated that it performed the function of a flash suppressor as defined by the statute. Thus, the judge found that the device in question was a flash suppressor and the rifle, therefore, was a semiautomatic assault weapon.[2] We conclude that the record amply

---

[2]   Bryant also takes issue with the judge's alternative conclusion that even if the device was not a flash suppressor, the rifle could readily accommodate such a device. Bryant claims that the judge erroneously interpreted the statutory language and that there was no evidence that his rifle had a "threaded barrel designed to accommodate a flash suppressor," which the statute specifies as an alternative to having a mounted flash suppressor. *See* 18 U.S.C. § 921(a)(30). But the record supports the judge's conclusion that the device mounted on Bryant's rifle was in fact a flash suppressor, so we need not bog down in a discussion about the meaning of the statutory language or the judge's interpreta-
(continued...)

supports the judge's finding, and we find no error in that determination.

Likewise, we find no clear error in the district judge's factual determination that Bryant possessed the firearms in connection with drug dealing. As noted, the judge evaluated detailed evidence in the PSR indicating that Bryant possessed the firearms in connection with another felony offense—drug dealing—or with the knowledge that the firearms would be used or possessed in connection thereof. *See* U.S.S.G. § 2K2.1(b)(5). Bryant offered no evidence to dispute these facts at the hearing, even though he had opportunity to do so. Instead, he challenges the evidence in the PSR as inadequate to establish a nexus between the firearms and the drugs found. But on the basis of the evidence in the record, the judge was on solid ground concluding as she did, given the ubiquitous observation in the courts that guns are "tools of the drug trade." *See, e.g.*, *United States v. Castillo*, 406 F.3d 806, 815 (7th Cir. 2005). Plus, the evidence in the record indicates that the firearms were found in close physical proximity to the narcotics in question, a circumstance we have held as presumptively establishing a nexus between the firearms and drug activity. *See, e.g.*, *Corral*, 324 F.3d at 873. We find no clear error in the judge concluding as she did that Bryant possessed his firearms in connection with drug dealing.

Finally, pursuant to *Booker*, we must evaluate the reasonableness of Bryant's sentence. 125 S. Ct. at 765. We repeat that the district judge imposed a sentence that happened to be at the low end of the calculated guidelines range. We have recognized that sentences properly

---

[2] (...continued)
tion thereof in making her alternative finding. *Cf. United States v. Marshall*, 83 F.3d 866, 869 (7th Cir. 1996).

calculated under the guidelines (and there is no indication that the district judge erred in her calculations) are entitled to a rebuttable presumption of reasonableness. *See United States v. Mykytiuk*, 415 F.3d 606 (7th Cir. 2005). Furthermore, the reasonableness of a sentence is guided by the factors set forth in 18 U.S.C. § 3553(a). *See Booker*, 125 S. Ct. at 765-66; *United States v. Alburay*, 415 F.3d 782 (7th Cir. 2005).

As described, the district judge gave detailed and full consideration to the various factors in play in § 3553, and the resulting sentence was within the properly calculated guidelines range. In sum, we have no difficulty concluding that Bryant's sentence was reasonable, and Bryant has offered no valid argument to convince us otherwise.

AFFIRMED.


A true Copy:

      Teste:


           _____
           *Clerk of the United States Court of*
           *Appeals for the Seventh Circuit*