UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued August 2, 2005
Decided January 24, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

No. 04-4171

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Western District of |
| | Wisconsin |
| *v*. | |
| | No. 04-CR-086-S-01 |
| PATRICIA L. LEWIS, | |
| *Defendant-Appellant*. | John C. Shabaz, |
| | *Judge*. |

**O R D E R**

Patricia Lewis pleaded guilty to attempting to possess and distribute powder cocaine, 21 U.S.C. §§ 846, 841(a)(1).  Applying the guidelines as advisory, the district court sentenced her to 87 months' imprisonment, the top of the applicable range of 70 to 87 months.  On appeal,  Lewis argues that the district court miscalculated that range by holding her responsible for drug transactions that, she insists, were not relevant conduct.  She also contends that the court imposed an unreasonable sentence by failing to account for various mitigating factors such as her age, her personal history, the toll drug addiction has taken on her life, depression, and her work ethic.  We affirm.

On February 20, 2003, deputies of the Wood County, Wisconsin, sheriff's department arrested Lewis after she purchased 272 grams of powder cocaine from an informant. A short time afterward, deputies searched her house pursuant to a warrant and found over $31,000 in cash, a plastic straw they suspected was used for snorting cocaine, other drug paraphernalia, and papers documenting what appeared to be drug transactions.

Lewis was charged in federal court and in September 2004 entered into a written plea agreement. In that agreement the parties stipulated, "based on the presently available evidence, that the United States can prove the following sentencing factor beyond a reasonable doubt: (1) that the defendant's total offense conduct was between 500 grams and 2 kilograms of cocaine." At the change-of-plea hearing on September 20, 2004, Lewis acknowledged that she was responsible for the stipulated amount. During the hearing, the district court informed Lewis that the stipulation regarding the quantity of cocaine was merely a recommendation that the court could later reject without permitting Lewis to withdraw her plea. Lewis acknowledged that she understood, and her plea was accepted by the district court.

After the change-of-plea hearing, the probation officer who drafted the presentence investigation report cited evidence that demonstrated that Lewis was responsible for an even greater amount of cocaine than suggested by her plea agreement. In reaching the conclusion that Lewis was actually responsible for the possession or distribution of at least 2.24 kilograms of powder cocaine, the probation officer started with the 272.2 grams that Lewis bought from the informant working with the Wood County Sheriff's Department. The probation officer then included 1.97 kilograms that two other informants claimed to have bought over a period from 1998 to 2002 from either Lewis or her partner in drug sales, her son-in-law Clair Visgar, or from both together. As support for including this amount, the probation officer relied on statements from additional witnesses who corroborated Lewis's drug partnership with Visgar and the amounts of cocaine they were selling; the officer additionally cited statements that Lewis "regularly" bought and sold cocaine from 1999 to 2003.[1] Next, because the probation officer counted as relevant conduct sales of cocaine beginning in 1998, the officer included two misdemeanor convictions from 1991 and 1992 in Lewis's criminal history since they occurred less than ten years before the commencement of her relevant conduct. *See* U.S.S.G. §§ 4.A1.1, cmt. n.2, 4A1.2, cmt. n.8. Consequently, the probation

---

[1] What is more, corroborating witnesses asserted that Lewis may have bought even more than 2.24 kilograms of cocaine for resale. Thus, as the probation officer explained, the estimates for purposes of computation were "extremely conservative."

officer recommended that the district court find a Criminal History Category of III and a total offense level of 25 after adjusting downward for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, resulting in a guideline range of 70 to 87 months' imprisonment.

Lewis objected to the findings in the presentence report. First, she attacked the credibility of the statements by the informant who participated in her capture as well as the two informants who testified that she was responsible for possession and distribution of 1.97 kilograms of cocaine above the 272 grams with which she was arrested. She also protested that she was not in the business of selling cocaine with Visgar. Next, she claimed that, because she quit selling cocaine between May 2002 and February 2003 and had never before sold cocaine to the informant, the amounts she sold between 1998 and 2002 should not be considered as part of the relevant conduct for the offense of conviction. Thus, she contended, the two misdemeanor convictions from 1991 and 1992 were too old to count in her criminal history. Additionally, she claimed that the government breached the plea-agreement stipulation as to drug quantity by "vouching" for the reliability of the witness statements relied on by the probation officer. Last, Lewis argued for sentence below the guideline range based on what she characterized as "imperfect entrapment": she had stopped selling cocaine, she claimed, until the informant contacted her. According to Lewis, although she initially resisted the informant's attempt to "induce and persuade her to purchase some cocaine," she could no longer resist his importuning and capitulated.

When sentencing Lewis in November 2004, the district court anticipated the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and imposed a guidelines sentence at the top of the range and an identical, alternative sentence informed by the guidelines and the other factors listed in 18 U.S.C. § 3553(a). The district court rejected Lewis's objections to the presentence report and declined to be limited by the stipulation to quantity in the plea agreement. Moreover, the court deemed the statements from the two buyers who provided the principal support for the probation officer's calculation to be corroborated by the testimony of other witnesses and therefore "reliable." With respect to relevant sales, the court found that Lewis and Visgar "were in the cocaine business together." The district court also determined that the sales of cocaine from 1998 until Lewis's 2003 arrest were all part of the same course of conduct; in so finding, the court noted the "regularity," "similarity," and "temporal connection" between the drug transactions from 1998 to 2002 and those from 2003. Consequently, the district court included Lewis's two misdemeanors in the criminal history.

Having calculated the advisory range as being equal to 70 to 87 months' incarceration, the court declined to impose a sentence below it (or depart downward, as it was called under the mandatory regime). After examining the recorded

telephone conversations with the informant, the court explained that it discerned no "backing off" by Lewis and therefore rejected the "imperfect entrapment" argument. The court also refused to accept her arguments that mitigating factors warranted a lower sentence. Factors relevant to § 3553(a) that Lewis cited were her age (she was 49), her history of depression and drug and alcohol addiction, her assertion that she tried to quit taking and selling drugs after her son was arrested in May 2002 for drug offenses, her contention that she had always worked hard, and her statements of contrition for letting down her family. Balancing the § 3553(a) factors, the judge considered the guidelines, the nature and circumstances of Lewis's offense, her personal history and circumstances and—most especially—the "societal interest of punishing and deterring her as well as protecting the community." The district judge added that he did not believe that she had actually quit selling or using cocaine after her son's arrest. Instead, he believed that her involvement in drugs was much greater than she let friends and neighbors know. Given her substantial involvement with cocaine, the court thought that imposing a sentence at the high end of the advisory guidelines range was more than justified.

On appeal, Lewis argues that she must be resentenced because the district court did not find the facts supporting her sentence beyond a reasonable doubt and because, in her view, the court miscalculated the applicable guideline range and imposed an unreasonable sentence by refusing to drop below the range (or depart downward, in the old regime's terms). The first contention is easily dispatched: when a court applies the guidelines as advisory, as here, facts need be proved by only a preponderance of the evidence. *See United States v. Bryant*, 420 F.3d 652, 656 (7th Cir. 2005); *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005). Therefore, we have upheld alternative sentences informed by the guidelines even when the underlying facts have been found by a mere preponderance. *E.g.*, *Bryant*, 420 F.3d at 655–56.

We next turn to Lewis's attack on the district court's calculation of the guidelines range, its first task under the post-*Booker* advisory regime, *Dean*, 414 F.3d at 727. A district court calculates that range in the same manner as before *Booker*: by making findings of fact where the facts are disputed. *Id.* at 727. A district court may rely on a presentence report in calculating drug quantity provided that the information in the report bears "sufficient indicia of reliability." *United States v. Sutton*, 406 F.3d 472, 474 (7th Cir. 2005); *see United States v. Hankton*, Nos. 03-2345 & 03-2915, 2005 WL 3549215, at *10 (7th Cir. Dec. 29, 2005). As was true before *Booker*, we overturn the court's findings of fact only if clearly erroneous. *Hankton*, 2005 WL 3549215, at *7; *United States v. Arnaout*, Nos. 03-3297 & 03-3412, 2005 WL 3242213, at *2 (7th Cir. Dec. 2, 2005); *United States v. Julian*, 427 F.3d 471, 489 (7th Cir. 2005).

Lewis first maintains that none of the transactions that occurred before the February 2003 offense were part of the same common scheme or plan under U.S.S.G. § 1B1.3 because that purchase involved a different person (the informant) and was removed from her previous dealings by an eight-month, drug-free hiatus beginning in May 2002. Thus she maintains in effect that the only amount for which she could be held responsible is the 272 grams of powder cocaine with which she was arrested. Nevertheless, by stipulating in her plea agreement and at the plea hearing that she was responsible for an amount of at least 500 grams to 2 kilograms of cocaine, Lewis has already admitted that her relevant conduct included much more than the attempted possession and distribution of the 272 grams for which she was arrested. She did not reserve the right to argue at sentencing that the amount was less. Although the plea agreement did not expressly enumerate the specific transactions on which it was based, the remaining 228 grams to 1.83 kilograms to which she admitted could only have come from her prior drug dealings, and her stipulation was necessarily an admission that these earlier transactions were part of her relevant conduct and part of the same common scheme or plan. An admission in a plea agreement is "even better than a jury's finding beyond a reasonable doubt," *see United States v. Warneke*, 310 F.3d 542, 550 (7th Cir. 2002), and she may not retract it now. *See United States v. Newman*, 148 F.3d 871, 876 (7th Cir. 1997) (stipulation waives later denial of relevant conduct); *United States v. Flores-Sandoval*, 94 F.3d 346, 349 (7th Cir. 1996) (same). As a consequence of her admission and because it was not bound by the plea agreement, the district court was free to go the next step and find that her relevant conduct actually involved 2.24 kilograms of cocaine, so long as the finding was based on reliable information. After all, the court warned her that by making the agreement she was bound by her stipulations though the court was not, *see* U.S.S.G. § 6B1.4(d); *United States v. Mankiewicz*, 122 F.3d 399, 403 n.1 (7th Cir. 1997) ("[A]s the Guidelines themselves make clear, although the plea agreement binds the parties, it does not bind the court.").

Lewis is left, then, with only her argument that the district court should not have based its finding that she was responsible for the extra 0.24 kilograms on the "unreliable" hearsay testimony of the informant and the other witnesses, whom she characterizes as criminals with much to gain by testifying against her. However, the Federal Rules of Evidence do not apply to sentencing, *Dean*, 414 F.3d at 730, and the district court was free to rely on hearsay in holding Lewis responsible for more cocaine than she purchased from the informant in February 2003 as long as that evidence included sufficient indicia of reliability. *See Hankton*, 2005 WL 3549215, at *7; *United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 671 (2005); *see also United States v. Johnson*, 227 F.3d 807, 813 (7th Cir. 2000) (sentencing court "is entitled to credit testimony that is totally uncorroborated and comes from an admitted liar, convicted felon, large scale drugdealing, paid government informant." (internal quotations and citations

omitted)). Further, the district court correctly noted that these witnesses' statements were corroborated by other individuals who sold or witnessed sales of cocaine to Lewis far above that 1.97 kilograms. *See Hankton*, 2005 WL 3549215, at *7; *see also United States v. Martinez*, 289 F.3d 1023, 1028–29 (7th Cir. 2002) ("[H]earsay is permitted at sentencing if it is reliable; reliability may be established by corroborating evidence."). Indeed, as the district court found, the $31,000 and the drug ledgers found in her house immediately after she bought cocaine from the informant are powerful evidence that the purchase from the informant was not an isolated incident. Thus, the district court correctly determined the amount of the cocaine attributed to Lewis and arrived at the appropriate base offense level. Moreover, because the 1998 to 2002 sales were necessarily part of her relevant conduct, *see supra* p. 8, the court properly included the 1991 and 1992 convictions in her criminal history as they were less than ten years prior to that conduct. *See* U.S.S.G. §§ 4.A1.1, cmt. n.2 (criminal history excludes offenses committed more than ten years before the offense), 4A1.2, cmt. n.8 (all relevant conduct constitutes the offense of conviction); *United States v. Carroll*, 110 F.3d 457, 461 (7th Cir. 1997). Consequently, the court's calculation of the resulting range of 70 to 87 months was also correct.

Finally, we consider the reasonableness of Lewis's sentence. Lewis contends that the district court erred by refusing to drop under the guidelines range on account of "imperfect entrapment," and asserts in shotgun fashion that the sentence was unreasonable because, she says, the court failed to consider purported mitigating factors such as her age, difficult childhood and "lack of guidance as a youth," history of drug addiction, depression, and self-proclaimed hard work ethic. Yet it is clear from the record that the judge did all that is required of him; he gave "meaningful consideration" to the relevant factors, *see United States v. Brock*, No. 03-2279, 2006 WL 39050, at *1 (7th Jan. 9, 2006); *United States v. Williams*, 425 F.3d 478, 480 (7th Cir. 2005). As mentioned above, the court considered the nature and circumstances of the crime, expressly rejecting her "imperfect entrapment" arguments. It also examined Lewis's history of drug addiction and use, which it said was greater than she was willing to admit, and it declined to dip below the range on account of her statements regarding her work ethic before she became a drug dealer, her age, and her family circumstances. All this in mind, the court determined that a sentence at the high end of the guidelines range was the best way to serve the "societal interest of punishing and deterring her as well as protecting the community." As we have often noted, sentences within the guideline range are presumed reasonable except in the rarest cases, *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), and Lewis gives us no persuasive reason why hers should be the exception.

Although Lewis belatedly argues that the court ignored a report by a psychologist about her depression, she does not now, and did not at sentencing,

explain how that report makes her sentence unreasonable.  In fact, at sentencing Lewis simply asked the court to make the report part of the record, without specifying any reason why it warranted a lower sentence.  Although we will vacate for resentencing when the district court ignores a good argument for a lower sentence, we will not require the district court to say any magic words in the absence of a developed argument.  *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005); *see Dean*, 414 F.3d at 729 (importing requirement to discuss factors not raised by the parties would unnecessarily increase the district courts' workload); *United States v. George*, 403 F.3d 470, 472–73 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 636 (2005) (sentencing courts "need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.").  In any event, we cannot, as Lewis seems to think, command the district court to lower her sentence simply because we might have imposed a lower sentence were we in the district court's shoes.  *See United States v. Lopez*, No. 05-2432, 2005 WL 3288286, at *3 (7th Cir. Nov. 10, 2005); *United States v. Newsom*, 428 F.3d 685, 686–87 (7th Cir. 2005).

AFFIRMED.